UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| Antonio Dionn Turner | ) | |
| Debtor | ) | Case number 20-71747-pmb |
| | ) | |
| _____ | ) | _____ |
| | ) | |
| MNSF T3 SPE, LLC | ) | |
| Movant | ) | |
| v. | ) | Notice of Hearing |
| | ) | |
| Antonio Dionn Turner; Melissa J. | ) | |
| Davey, Trustee | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Notice Of Hearing

PLEASE TAKE NOTICE that Movant has filed a Motion for Relief from Stay and related papers with the Court seeking an order granting relief from the automatic bankruptcy stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the Motion for Relief at the following number Toll-free number: 833-568-8864 ; meeting id 161 706 9079at 9:00 am.  on March 10, 2022 in Courtroom, 1202, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303. 1 Use the Contested Matter portion of the

caption only for matters that are contested matters under Fed. R. Bankr. P. 9014. For all other matters, just use the case portion of the caption. Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.

Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's Office is: Clerk,

U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive SW (formerly Spring Street SW), Atlanta, Georgia 30303. *You must also mail a copy of your response to the undersigned at the address stated below.* If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting relief.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

This notice is sent by the undersigned pursuant to 11 U.S.C. § 362 noticing requirements.

Dated: February 16, 2022

Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: /s/Elizabeth M. Cruikshank

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| Antonio Dionn Turner | ) | |
| Debtor | ) | Case number 20-71747-pmb |
| | ) | |
| | ) | |
| | ) | |
| MNSF T3 SPE, LLC | ) | |
| Movant | ) | |
| v. | ) | |
| | ) | |
| Antonio Dionn Turner; Melissa J. | ) | |
| Davey, Trustee | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Amended Motion for Relief from Automatic Stay

Movant MNSF T3 SPE, LLC ("Movant") comes before this Honorable

Court and brings this Motion for Relief from Stay by and through undersigned

counsel pursuant to 11 U.S.C. § 362, 11 U.S.C. § 363, and Federal Rule of

Bankruptcy Procedure 4001 (a) (1) by showing this Honorable Court the

following:

Basis for the Motion

1. Movant seeks relief from existing stay for the purpose of dispossessing Debtor of a residential rental property located at: 8880 Ashton Road, Jonesboro, GA 30238 ("Property").

2. Property is in Clayton County, Georgia and a dispossessory would be subject to the jurisdiction of the Courts of that county.

3. Movant owns and/or manages the Property. Debtor is a tenant pursuant to a residential lease agreement executed on Sunday, October 20, 2019. The agreement provides Debtor with a possessory interest and stipulates that Debtor's monthly rent is $911.00 (nine hundred eleven and 00/100 dollars). Debtor also pays monthly fees amounting to: a late fee of $210.00 charged each month during which Debtor's rent payment is delinquent

4. Debtor continues to reside in the Property and has failed to provide adequate assurance of future performance under the terms of the Lease Agreement.

1. Debtor filed a petition under Chapter 13 Of the Bankruptcy Code on Monday, November 16, 2020.

2. O.C.G.A. § 44-7-54 (a) (1) provides that  where the issue of the right of possession cannot be finally determined within two weeks from the date of service of the copy of the summons and the copy of the affidavit, the tenant shall be required to pay into the registry of the trial court: "All rent and utility payments which are the responsibility of the tenant payable to the landlord under terms of the lease which become due after the issuance of the dispossessory warrant, said rent and utility payments to be paid as such become due."

3. Because Tenant-Debtor filed the instant bankruptcy case, Landlord's ability to collect rent pursuant to O.C.G.A. § 44-7-54 and all other sections of applicable Georgia law has been stayed.

4. Debtor has failed to pay rent, late fees, and all other fees associated with the lease agreement, either to Movant or into the Registry of the Court, for December, 2020 through March, 2022. Debtor is, therefore, in default of the lease and the provisions of 11 U.S.C. § 365 do apply.

Movant's Requests

5. Pursuant to 11 U.S.C. § 362, Movant may be stayed from the commencement or continuation of any court or other proceeding against Debtor to recover possession of the rental Property.

6. Movant has, since the filing of the Bankruptcy petition, incurred additional costs for attorneys, rent, and all other expenses associated with Debtor's occupancy of the property. Continuation of the automatic bankruptcy stay will harm Movant.

7. Movant is entitled to recover post-filing rent on the first of each month, plus late fees (if rent payments are late) and all other outstanding post-filing fees specified in the lease agreement.

8. Debtor owes prepetition debt and fees in the amount of $5,142.46. Debtor owes post-petition rent and fees beginning December 1, 2020 in the amount of $14,660.00

9. Movant seeks possession of the property and unpaid post-filing rent and fees from the Debtor.

10. Movant cannot be adequately protected in the Bankruptcy matter, thus Movant should be granted relief from the Stay under Section 362(d) of the United States Bankruptcy Code.

Prayer For Relief

WHEREFORE, Movant respectfully requests that the Court issue an order granting the following:

a)     That Movant be granted an Order lifting the automatic stay and further allows Movant to proceed under applicable non-bankruptcy law to enforce its

remedies, specifically to allow the Courts of Clayton County, State of Georgia to move forward with a dispossessory action against Debtor including a money judgment against Debtor for unpaid post-filing rent and fees;

b)      For reasonable attorney's fees associated with the cost of bringing this Request for Relief from Stay;

c)      To the extent provided by 11 U.S.C. § 109 (g), should Debtor move to voluntarily dismiss the current bankruptcy case, that Debtor be enjoined from refiling within 180 days, and/or refiling in such manner as to prevent Movant from proceeding with the dispossessory action for possession;

d)      That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived;

e)      Alternatively, if relief from stay is not granted, Movant respectfully requests the Court to order just and proper protection for its interests in the subject property including, but not limited to, payment of post-filing rent into the registry of the Court and/or ordering Debtor to strictly comply with the terms of the rental lease Agreement.

Respectfully submitted on Wednesday, February 16, 2022.

Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: /s/Elizabeth M. Cruikshank

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235

## Certificate of Service

This is to certify that I, the undersigned attorney Elizabeth M. Cruikshank, have served Debtor and all parties named on the Distribution List with the foregoing Motion for Relief from Automatic Stay (including the attached and completed Notice of Hearing as well as all attached exhibits) by properly filing same with the Bankruptcy Court for the Northern District of Georgia using the CM/ECF system (which will deliver electronic notice to certain parties) and by depositing a true and accurate copy of same in the U. S. Mail, with proper postage affixed and addressed as follows:

*Debtor and Joint-Debtor* :
Antonio Dionn Turner
8880 Ashton Road
Jonesboro, GA 30238

*Debtor's Attorney*:
Matthew Thomas Berry
Matthew T. Berry & Associates
Suite 600
2751 Buford Highway, NE
Atlanta, GA 30324

*Trustee*:
Melissa J. Davey
Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303

*Movant's Attorney*:
Elizabeth M. Cruikshank, Esq.
Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328

On Wednesday, February 16, 2022.

Cruikshank Ersin, LLC
6065 Roswell Road, Suite 680
Atlanta, Georgia 30328
Fax: 770-884-8114
Telephone: 770-884-8184
E-mail address: beth@cruikshankersin.com

By: /s/Elizabeth M. Cruikshank

Elizabeth M. Cruikshank, Esq.
Attorney for Movant
Georgia Bar Number 215235

DocuSign Envelope ID: 27B0FBB61F159-4935-9070-5679AAF7E206



**LEASE RENEWAL**

Antonio Turner
8880 Ashton Rd
Jonesboro          , GA  30238-4797

RE: _MNSF T3 SPE, LLC_____ ("Owner") lease to _Antonio Turner_____

_____ ("Resident"), collectively referred to as "Parties".

Property Address: _8880 Ashton Rd_____     _Jonesboro_____     , GA  30238-4797    ("Rental")

Dear Resident,

The lease term beginning _10/20/2018_____ on your current Rental will expire on _10/19/2019_____.

On behalf of your Owner, we are pleased to present you with the lease renewal options stated below. Please indicate your choice by selecting one option, sign and return via DocuSign to GOAL Properties.

Effective ___10/20/2019_____, Owner and Resident agree to the following lease option:

Please check one Option only:

Option A: ___X__    Lease Term:  12
                  Rental Rate:  $828.00
                  Lease Commencement Date:   10/20/2019
                  Lease Expiration Date:   10/19/2020

Option B: _____    Lease Term:  24
                  Rental Rate:  $828.00
                  Lease Commencement Date:   10/20/2019
                  Lease Expiration Date:   10/19/2021

Pursuant to your Lease, failure to select one of the above options OR timely submit Notice to Vacate (via resident portal online) will result in an automatic 10% rent increase at lease expiration. Acceptable notice to vacate is still required before move-out, per your lease agreement.

If at the time you originally executed your current Lease or if sooner, most recently renewed the Lease, GOAL Property Services, LLC (or its affiliate) was a party to the Lease or identified therein as Agent, the additional provisions below shall apply. Otherwise, you will be required to execute a new form of Lease Agreement which we will deliver prior to the expiration of your current Lease.


EQUAL HOUSING
OPPORTUNITY

GOAL Renewal Lease 1.1



**ADDITIONAL PROVISIONS**

**Subordination.** The Lease is subject to and subordinate to all Home Owner's Association's Covenants, Conditions and Restrictions, Bylaws and Rules and Regulations and all Federal, State or local laws, ordinances or regulations (hereinafter jointly "Regulations") that cover or affect the residency at the Property. For the avoidance of doubt, if there is a conflict between a provision in the Lease and the Regulations, the Regulations will prevail.

Section 6 of your current lease is deleted in its entirety and replaced with the following provision:

**6. PETS:** Resident must immediately notify Landlord and complete a new (or revised) Pet Addendum if Resident desires to keep a new or replacement animal at the Property. The Pet Addendum must be completed and approved by Landlord before the new or replacement animal is permitted at the Property. Resident must pay a non-refundable pet fee of $300.00 for each pet approved by the Landlord. Resident agrees that no more than three (3) animals will be present at the Property at any time. All new or replacement animals must meet the Landlord's requirements (including breed restrictions) in effect at the time. Resident agrees and is solely responsible for cleaning up after Resident's pets and for any damage caused by any pet(s) residing or visiting the Property. If at any time, there is a prohibited or aggressive animal at the Property, this event constitutes a material breach of the Lease and Landlord can immediately require that the animal(s) is permanently removed from the Property.

In addition, Section 8 of your current lease is deleted in its entirety and replaced with the following provision:

**8. INSURANCE:** Landlord <u>REQUIRES</u> that Resident(s) procure and maintain renter's liability insurance in the minimum amount of one hundred thousand dollars ($100,000) for the duration of their tenancy. Failure to provide proof of liability insurance with the stated policy limit may result in enrollment of the Resident by Landlord in a Master Resident Liability Program. Additional information regarding the requirement to maintain renter's liability insurance is set forth in the attached Insurance Addendum. Also, the Landlord's insurance does not cover loss of Resident's/occupant's personal property.

**LANDLORD or Landlord's Agent:**

By: _Saadai Walker_
    DocuSigned by:
    93AD29D725D54DD...
Name: Saadai Walker
Title: PROPERTY MANAGER
Date: Sep-04-2019 | 5:30:36 PM CDT

**RESIDENT(S):** *All names listed above must sign below.*

_Antonio Turner_    Date: Sep-04-2019 | 2:49:55 PM PD
DocuSigned by:
0ABE08029C4F4E6...
Name: Antonio Turner

_____
Name: _____    Date: _____

_____
Name: _____    Date: _____

_____
Name: _____    Date: _____



GOAL Renewal Lease 1.1

2



## INSURANCE ADDENDUM

Property Address: 8880 Ashton Rd

This Addendum is attached to and becomes a part of the Residential Lease Agreement. For the duration of the Lease Agreement, Resident is required to procure and maintain the following minimum required insurance coverage:

- $100,000 Limit of Liability for Resident's legal liability for damage to the Landlord's property for no less than the following causes of loss: fire, smoke, explosion, backup or overflow of sewer, drain or sump, water damage, and falling objects.
- Resident is required to furnish Landlord with evidence of Minimum Required Insurance prior to occupancy of the Property, for the duration of the Lease and at the time of each Lease renewal. If at any time Resident does not have Minimum Required Insurance, Resident is in breach of the Lease Agreement and Landlord shall have, in addition to any other rights under the Lease Agreement, the right but not the obligation to purchase Minimum Required Insurance coverage and seek reimbursement from the Resident for all costs and expenses associated with such purchase.
- Resident may obtain Minimum Required Insurance or broader coverage from an insurance agent or insurance company of Resident's choice. If Resident furnishes evidence of such insurance and maintains the insurance for the duration of the Lease Agreement, then nothing more is required.
- If Resident does not maintain Minimum Required Insurance, the insurance requirement of this Lease Agreement may be satisfied by Landlord, who may schedule the Resident in Master Resident Liability Program ("MRLP"). The MRLP will satisfy the Minimum Required Insurance coverage listed above. An amount equal to the total cost of the MRLP shall be charged to Resident by the Landlord. Some important points of this program, which Resident should understand are:

  1. MRLP is not renter's insurance. The MRLP does not cover the Resident's/occupant's personal property (contents), additional living expense or liability arising out of bodily injury to any third party. If Resident requires any of these coverages, then Resident should contact an insurance agent or insurance company of Resident's choice.

  2. The MRLP may be more expensive than the cost of Minimum Required Insurance obtainable by Resident elsewhere. At any time, Resident may contact an insurance agent or insurance company of their choice for insurance options to satisfy the Minimum Required Insurance under the Lease Agreement.
  3. Licensed insurance agents may receive a commission on the MRLP.
  4. The total cost to the Resident for the Landlord enrollment in the MRLP is Eleven Dollars ($11.00) per month. The monthly charge is subject to change with 30 day's prior notice.
  5. The monthly charge is fully earned on the first day of coverage and not subject to proration.
- If Resident obtains Minimum Required Insurance or broader coverage from an insurance agent or insurance company of Resident's choice, Resident agrees to:

  1. Name the following as an additional interest on the policy: Alta Program Insurance Agency, LLC; GOAL Property Services, LLC; and the Property Owner (see box 5 of Lease Summary Cover Page.) In the event, Resident fails to name the required entities an additional interest or the additional interest entities change; the Resident hereby appoints and makes Landlord its Attorney in Fact  with the power to notify Resident's insurance agent or insurance company and provide the company with the names of all entities that are required to be listed as an additional interest.

Enrollment in the MRLP is not mandatory, and Resident may purchase Minimum Required Insurance or broader coverage from an insurance agent or insurance company of Resident's choice, after which time enrollment in the MRLP will be terminated by the Landlord.

In the event Landlord elects to schedule Resident in the MRLP, Resident agrees to pay the cost of the MRLP monthly with rent. Resident understands that the MRLP will not cover Resident's/occupant's loss or damage to their personal property—only a renter's insurance policy does this.

| | |
|---|---|
| DocuSigned by: | Sep-04-2019 \| 2:49:55 PM P |
| Resident: Antonio Turner | |
| 0ABE08D29C4F4E6... | |
| Resident: _____ | Date |
| Resident: _____ | Date |
| Resident: _____ | Date |





**RENEWAL LEASE SUMMARY COVER PAGE**

| LEASE DETAILS | |
|---|---|
| Lease Commencement Date: | 10/20/2018 |
| Lease Expiration Date: | 10/19/2019 |
| Rent Payable to: | MNSF T3 SPE, LLC |

| MONTHLY RENT | |
|---|---|
| Rent (months 1-12): | $  788.00 |
| Rent (months 13-24): | $  N/A |

***Rent is due on the 1st day of the month & late after the 3rd day of the month***

| Other Amounts (if applicable) | |
|---|---|
| Late Fee: | $ 75.00 initial / $5 per day thereafter |
| NSF Fee: | $ 50.00  per occurrence |
| Eviction Administrative Fee | $ 100.00 per occurrence |
| Delinquency Notice Fee | $ 50.00  per occurrence |

| CHARGES, FEES and DEPOSITS DUE PRIOR TO MOVE IN |
|---|
| At or Before Lease Signing |

| Security Deposit: | $  $714.00   PAID Initial lease |
|---|---|

***PAYMENTS DUE PRIOR TO OCCUPANCY MUST BE PAID IN CERTIFIED FUNDS***

| Payments |
|---|

Non-Refundable Pet Fee(s):

Total # of Pets  N/A        X $300 =                 $  N/A         PAID Initial Lease

***PAYMENTS DUE PRIOR TO OCCUPANCY MUST BE PAID IN CERTIFIED FUNDS & SEPARATE CHECKS***

DocuSign Envelope ID: 7D3F51D4153C7-AC80-960A-0B19A7B5D5E7



**Rent Payment Methods**:
1.  Cashier's check, money order, personal check, or bill pay check:
    a.  Via Regular Mail:     (PO Box 11146, Charlotte, NC 28220)
    b.  Via Overnight Mail:  (PO Box 11146, Charlotte, NC 28220)

2.  ACH or Credit Card payments via Resident(s) web portal
3.  CASH PAYMENTS ARE **NOT** ACCEPTED.

Rent and deposits should be made payable to the "Owner" as indicated on Lease
Administrative Fee should be made payable to GOAL Properties

Please refer to addenda attached to the lease which incorporated herein for all purposes:
1.  Landlord Rules and Regulations
2.  OFAC Addendum
3.  Bed Bug Policy
4.  Security Deposit Addendum



**By Residents' initials above Resident confirms they have read and agreed to the terms of the attached addenda that is incorporated into this lease.**

**Address for All Notices-Do Not Send Rent to this address:**
1.      6836 Morrison Blvd (suite 420) Charlotte, NC 28211

DocuSign Envelope ID: 7D8F515415C7-4C80-9601-0B19A7B5D5E7



## Residential Lease Agreement

**TERM**: from __10/20/2018__ ("Commencement Date") to __10/19/2019__ ("Expiration Date").

**RENT**: __788.00__ per month for months 1-12, __N/A__ per month for months 13-24.

GOAL Properties ("Agent"), as agent for __MNSF T3 SPE, LLC__ ("Owner" and together with Agent, collectively "Landlord").

Property Management Office Address: 2310 Parklake Dr. NE (suite 148) Atlanta, Georgia 30345 **(DO NOT MAIL RENT TO THIS ADDRESS)**.

Property Address: __8880 Ashton Rd__    __Jonesboro__    __GA__    (the "Property").
__30238-4797__

---

### ONLY PARTIES ALLOWED TO RESIDE AT / ON THE PROPERTY UNDER THIS LEASE

**Resident(s) & Occupants: (Co-Signers & Guarantors, although not residing at/on the Property will still be listed in this section as responsible Parties under this Lease.**

| Name | Email Address | Telephone No. | Resident/Occupant |
|------|--------------|---------------|-------------------|
| Antonio Turner | ANTONIOTURNER135@GMAIL.COM | (404) 732-2652 | Resident |
|  |  |  | N/A |
|  |  |  | N/A |
|  |  |  | N/A |
|  |  |  | N/A |
|  |  |  | N/A |
|  |  |  |  |

All names listed above are individually, jointly and collectively "Resident(s)" under this Lease. Resident(s) is a responsible party for the terms of the lease. Occupant(s) has a right to be present as allowed by Resident and the lease restrictions.

Pet(s):

| Type of Animal | Breed | Color | Weight | Name |
|----------------|-------|-------|--------|------|
| NA | NA | NA | NA | NA |
| NA | NA | NA | NA | NA |
| NA | NA | NA | NA | NA |

**Please refer to restricted breeds per the Resident Qualifications / Please mark N/A in each field that is blank**

Vehicle Information:

| Year | Make | Model | License Plate |
|------|------|-------|---------------|
| 2016 | Dodge | RAM | NA |
|  |  |  |  |
|  |  |  |  |

**Any Addenda attached to this Lease are hereby incorporated by reference and made part of this Lease**.

**Landlord and Resident(s) (collectively the "Parties") agree that Resident(s) shall lease the Property from Landlord on the terms and conditions contained in this lease, which shall include any Addenda attached. By signing this Lease, Resident(s) acknowledges and agrees that Resident(s) has read, understood and accepted all of the terms and conditions of this Lease and Addenda.**

1. **USE OF PROPERTY**: Resident(s) may use the Property as a private residence only. Commercial purpose such as operating a business on the premise is forbidden without express written consent from the Landlord. The only person(s) Resident(s) may permit to reside on the Property during the Term of this Lease are those listed as Resident(s) or Occupants contained in this Lease and for those that Landlord has given express written consent to reside at the Property.

a. **Guests:** Any persons not named on the Lease and who are permitted to reside at the Property at the Resident's permission shall not stay longer than 14 continuous days without permission from the Landlord. Any person who stays longer than 14 continuous days at the Property without the permission from the Landlord shall



DocuSign Envelope ID: 7D8F51D4-53C7-4C80-960A-0B19A7B5D5F4



**immediately be placed on the Lease or all Residents may be subject to Default under the Lease.**

2. **TERM**: The term of this Lease shall begin on the Commencement Date and end on the Expiration Date (the "Term"), unless otherwise renewed or terminated under the terms of this Lease, by agreement of the Parties, by applicable law, or otherwise as provided in this Section 2.

a. **WARRANTIES**: Landlord makes no express or implied warranties as to the Property's condition, and Resident(s) agree at the termination of this Lease to deliver possession of the Property back to Landlord in the same condition as at the time of move-in, fair wear and tear accepted. In addition, Resident(s) will deliver to Landlord a receipt for professional carpet cleaning for all carpeted areas, and failure to do so will result in a deduction from the Security Deposit in the amount of $250 except where not allowed by state Landlord/Resident laws.

b. **DELAY IN OCCUPANCY BEYOND 7 BUSINESS DAYS**: Resident(s) acknowledges that if the Property is occupied by prior Resident(s) or occupant on the anticipated Commencement Date, Landlord shall not be subject to any liability for its inability to deliver possession of the Property to Resident(s) and the validity of this Lease shall not be impaired, but the Commencement Date and Expiration Date shall be delayed by the number of days the delivery is delayed. If Occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, Landlord is not responsible for the delay. Resident can terminate the lease if the delay extends beyond 7 days. Termination notice must be in writing. All prepaid monies shall be returned to Resident(s) which shall be Resident(s)' sole and only remedy.

c. **RESIDENT'S FAILURE TO OCCUPY PROPERTY**: If Resident(s) refuses to occupy the Property after execution of the Lease, Landlord shall have the right to retain Resident(s)' Security Deposit and any and all other amounts collected prior to Resident(s)' occupancy of the Property, as Landlord's partial damages under this Lease. The Parties agree that Landlord's damages are incapable of precise calculation and result from Resident(s)' refusal to occupy the Property. Landlord's acceptance of Resident(s)' Security Deposit does not waive Landlord's right to exercise any other remedies available at law or under this Lease.

d. **AUTOMATIC RENEWAL OR TERMINATION**: This Lease shall automatically renew at the end of the Term per appropriate state Landlord/Resident(s) laws unless Landlord or Resident(s) provides written notice of termination at least 90 days before the Expiration Date, unless state law allows for a lesser time period.

i. **Move-out Notice**: Before moving out, Resident(s) must give Landlord advance written move-out notice as provided below. The move-out notice will not release Resident(s) from liability for the full term of the Lease Contract or renewal term. Resident will remain liable for the entire Lease Contract term if Resident(s) moves out early.

MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:
1. Landlord must receive advance written notice of Resident(s) move-out date at least 90 days before the Lease expiration.
2. Resident(s)' move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.
MOVE-OUT NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE.

ii. **Renewal**: Landlord may propose renewal options to Resident(s) prior to the expiration of this Lease or any renewal. Resident(s) will be required to execute a new lease, a lease addendum or other document evidencing the renewal lease terms. If Resident(s) does not sign a lease renewal or provide written notice of election to terminate, this **Lease will automatically renew on a Month-to-Month basis with Automatic Renewal Rent at 20% increase of prior month's rent (e.g. if previous month's rent was $1,000.00, the Renewal Rent will be $1,200.00)**, and the Term will continue to renew on a Month-to-Month basis until Landlord or Resident(s) provides written notice of termination. The effective date of such termination shall be the later of the date designated in such notice of termination (such term date shall not be more than 90 days from the lease expiration date) and that date which is 30 days after such

notice is received. Notwithstanding the foregoing, Rent may be increased at any time during the Month-to-Month tenancy upon 30 days' prior written notice, subject to state law.

iii. **No Oral Notice and Time is of the Essence**: Oral notification of a Lease renewal or termination is not sufficient under any circumstances. Time is of the essence for providing notice of renewal or termination, and strict compliance with the dates by which notice must be provided is required.

iv. **Holdover**: Holdover is defined as the following: (1) Resident(s) gives notice to vacate and continues to occupy the Property after the written termination date; or (2) Landlord gives notice of non-renewal or notice to vacate and Resident(s) continues to occupy the Property after such indicated date. Resident(s) will pay Holdover Rent for such holdover period and indemnify Landlord and Landlord's prospective new Resident(s) of the Property for any damages, including, but not limited to, lost Rent, lodging expenses, costs of eviction, and attorneys' fees. **Holdover Rent shall be two times (2x) the monthly Rent plus moving and storage fees that non-Holdover Resident incurs due to Holdover Resident's delay, which will be calculated on a daily basis, and will be immediately due and payable daily without notice or demand.**

e. **Lease Contract Changes:** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes made by a written addendum or amendment signed by the Resident(s) and Landlord or by reasonable changes of rules as allowed by applicable law.

3. **RENT**: Resident(s) will pay Landlord the Rent for the full Term of this Lease. Rent shall be payable by Resident(s) without notice, demand, deduction, or offset, except as required by state law. Moreover, Resident(s) will pay Rent in advance on or before the 1st day of each month. In addition, Resident(s) shall pay, as Additional Rent, all sums, fees and/or charges required to be paid by Resident(s) under this Lease (including, but not limited to, Late Fees and NSF Fees, Pet Fees, Administration Fees, Cleaning Fees, and Notice fees for the enforcement of terms under the Lease), whether or not such sums are specifically designated as "Additional Rent."

a. **Certified Funds Policy**: If Resident(s) fails to timely pay any amounts due under this Lease or if Resident(s) payment is not honored by the banking institution on which it was drawn, Landlord may require Resident(s) to pay such overdue amount and any subsequent Rent or other amounts due under this Lease in certified funds (e.g., cashier's check or money order). However, this Section 3 does not limit Landlord from seeking other remedies at law or under this Lease for Resident(s)'s failure to make timely payments with good funds.

b. **Application of Rents**: Regardless of any notation made by Resident(s) on a check or payment remittance, and subject to applicable state law, Landlord may apply Rents received from Resident(s) as follows: first to any non-Rent obligations of Resident(s) under this Lease, including, but not limited to, late charges, returned payment charges, repairs, periodic utilities, pet charges, or any administrative charges to enforce the terms of this Lease; then to unpaid portions of the security deposit; then to past- due Rent; and then to Rent then due and payable.

c. **Acceptance of Partial Rent Payment**: Subject to state law, Resident(s) acknowledges and understands that Landlord's acceptance of partial rent payment will not waive Landlord's breach of this Lease or limit Landlord's rights to evict Resident(s) through eviction proceedings, whether filed before or after Landlord's acceptance of any such partial payment. Notwithstanding the foregoing, Landlord is not required to accept any partial payment.

4. **UNTIMELY PAYMENTS, LATE FEES AND NSF FEES**:

a. **Late Fees**: If Landlord does not receive a Rent payment (i) in the full amount due and payable, (ii) at the designated place of payment and (iii) by **11:59 PM of the 3rd day of each calendar month**, Resident(s) will be assessed a Late Fee, which is subject to change from time to time by Landlord in its sole discretion, upon reasonable notice to Resident(s). For purposes of paying Rent and/or Late Fees, the mailbox is not deemed to be Landlord's "agent for receipt" (i.e., the postmark date shall not be deemed the date Landlord receives the payment). The Parties agree that Late Fees are based on a reasonable estimate of uncertain damages to Landlord that are incapable of precise calculation and result from



DocuSign Envelope ID: 7B8F51D4F3C7-4C80-960A-0B1BA7B5D5F3



untimely payments of Rent. Landlord's acceptance of a Late Fee does not waive Landlord's right to exercise remedies under law or equity.

b. **NSF Fees**: Resident(s) must pay Landlord the NSF Fee for each payment that Resident(s) tenders to Landlord which is returned or dishonored by the institution on which it is drawn for any reason, plus any Late Fees, pursuant to this Section 4, until Landlord receives payment. Resident(s) must make any returned payment good by paying any amounts plus associated charges in certified funds.

5. **DEPOSITS**: On or before the execution of this Lease, Resident(s) must make all required Deposits (i.e., Security Deposits, Pet Deposits, Key and Remote Deposits, etc.) to Landlord. No interest or income will be paid to Resident(s) on the Security Deposit, unless required by state law. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord. Any refund of the Security Deposit will be made payable to all Resident(s) named under this Lease. Landlord is not required to return or account for any Deposits until Resident(s) surrenders the Property and the Resident(s) provides the Landlord with a forwarding address, after which Landlord will mail the Security Deposit refund as required under state law, less any unpaid amounts due to Landlord plus any charges for default of Rent or other payments due under this Lease, damages caused by Resident(s) to the Property, cleaning the Property or other deductions permissible under this Lease and applicable state law. Landlord will provide a written statement accounting for any and all deductions to the Security Deposit amounts.

6. **PETS**: Resident(s) must pay a non-refundable pet deposit of $300.00 per pet if Resident(s) has listed any pets (number of pets not to exceed 2 without Landlord's permission) in this Lease. Resident(s) is solely responsible for cleaning up after Resident(s)' pet(s) and for any damage caused by any pet(s) residing or visiting the Property. Subject to attached pet policy addendum.

7. **UTILITIES**: Resident(s) responsible for ensuring that the following utilities are available to the Property at all times during the Term: water, electricity, gas, wastewater and garbage. Before signing this Lease, it is Resident(s) responsibility to determine that all such necessary utilities are available to the Property and are adequate for Resident(s) use. Resident will pay all deposits, charges, or fees on such utilities. Resident shall connect utilities in Resident(s) name and notify utility provider of move-in date to ensure proper meter reading. If local utility company requires the utility services to be held in the Landlord's name, the Resident will be charged on the ledger for the monthly utility bill. Resident must provide landlord with confirmation numbers and account numbers at the time of move-in. Disconnection of any Utilities shall be a Default under this Lease.

8. **INSURANCE**: Landlord's insurance does not cover Resident(s) for loss of Resident(s)' personal property, furnishings, or belongings. As such, Landlord **REQUIRES** that Resident(s) obtain and hold renter's insurance with liability coverage in an amount not less than Three Hundred Thousand Dollars ($300,000) for the duration of this Lease. Casualties such as fire, flood, water damage, theft, pet liability and general liability claims must be covered under the policy. Moreover, Resident(s) shall name Landlord as an additional insured under the insurance policy. Resident(s) agrees to maintain insurance coverage for his/her/their vehicle(s) parked on Landlord Property.

a. Proof of Renter's Insurance shall be provided to Landlord prior to occupancy of the Property. If not provided after Landlord's written request to Resident, Resident will be considered in Default under the Lease.

9. **WAIVER OF SUBROGATION RIGHTS**: Landlord and Resident(s) each waive and shall cause their respective insurance carriers to waive any and all rights to recover against the other or against the agents of such other party for any loss or damage to such waiving party (including deductible amounts) arising from any cause covered by any property insurance or any other property insurance actually carried by such party to the extent of the limits of such policy. Each of Landlord and Resident(s), will cause its respective insurers to issue appropriate waiver of subrogation rights endorsements to all property insurance policies carried in connection with the Property or the contents of the Property.

a. Resident(s) shall cause the property insurance policy required under this Lease and Landlord shall cause the property insurance policy carried by the Landlord to be written in a manner so as to provide that the insurance carrier waives all rights of recovery by way of subrogation against the other Party in connection with any loss or damage covered by such policy, regardless of whether such waivers are included in the applicable property insurance policies, and notwithstanding any other provision of this Lease to the contrary.

10. **REPAIRS AND MAINTENANCE**: Resident(s) shall keep and maintain the Property in a clean, safe and sanitary condition. Resident(s) is responsible for day to day maintenance and repairs on or about the Property, including, but not limited to ordinary pest control and Yard Maintenance. Pest control for termites and other wood destroying insects will be performed by the Landlord. For purposes of this Section, the "Yard" includes all lawns, shrubbery, bushes, flowers, gardens, or other landscaping features and foliage on or encroaching on the Property or on any easement appurtenant to the Property (but does not include any common areas that are to be maintained by any applicable homeowners' association), and "Yard Maintenance" means performing activities such as, but not limited to: mowing, fertilizing, trimming, controlling pests in the Yard, removing debris from the Yard, watering the Yard, all in accordance with all applicable state and local ordinances, laws and homeowners' association rules (if applicable).

b. **Misconduct or Negligence**: Resident(s), shall pay for any repairs to the Property required because of Resident(s), Guests, Invitees, and Occupants actions, misuse, misconduct or negligence.

c. **Emergencies**: Resident(s) shall immediately notify Landlord if any emergencies and/or need for major repairs (i.e., plumbing, electrical, fire, mechanical or other equipment problems that pose a health or safety risk) by calling your local Property Manager.

11. **SMOKE/CARBON MONOXIDE DETECTORS**: The Property is equipped with smoke/carbon monoxide detectors in accordance with applicable state laws. Removing, disconnecting or intentionally damaging a smoke/carbon monoxide detectors or removing a battery without immediately replacing it with a working battery may subject Resident(s) to civil penalties and liability for damages. In addition, tampering with or removing such alarms is a Default under this Lease.

12. **ALTERATIONS**: Resident(s) agrees not to make any alterations, modifications, or changes to the Property without Landlord's prior written consent. This includes, but is not limited to, changing of locks; adding additional locks and deadbolts to the doors and windows; or applying wallpaper, paints or stains applied to woodwork, walls or floors.

13. **LANDLORD'S RULES AND REGULATIONS**: Resident(s) agrees that Resident(s) and Resident(s)'s guests and invitees have read, understands and agrees to abide by Landlord's Rules and Regulations which are attached and incorporated to this Lease and any rules or covenants imposed by any applicable Homeowners Association, all of which may be subject to change from time to time.

14. **ASSIGNMENT AND SUBLETTING**: Resident(s) may not assign this Lease or sublet the Property without Landlord's prior written consent, which may be given or withheld in Landlord's sole discretion. An assignment or sublease of this Lease without Landlord's written consent is immediately voidable by Landlord and shall cause the Resident(s)(s) to be in Default of this Lease.

15. **SURRENDER AND ABANDONMENT:** You have surrendered the property when: (1) the move-out date has passed and no one is living in the home in our reasonable judgment; or (2) all keys have been turned in, whichever date occurs first. Resident(s) has abandoned the property when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) Resident(s) has been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the unit is not connected and/or has been terminated; and (4) Resident(s) has not responded for 2 days to Landlord's notice left on the outside of the main entry door, stating that we consider the house abandoned. A house is also "abandoned" 10 days after the death of the primary Resident. Surrender, abandonment, and judicial eviction end Resident(s)' right of possession for all purposes and gives Landlord the immediate right to: clean up, make repairs in, and relet the house, and determine any security deposit deductions.



DocuSign Envelope ID: 7D8F51D4153C7-AC80-960A-0B1DA7B5D5F1



16.    **LIABILITY**: Unless directly caused by Landlord's gross negligence or willful misconduct, Landlord is not responsible to Resident(s), occupants, guests or invitees of Resident(s) for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (e.g., carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, Landlord reserves the right to vacate any and all leases and Resident(s) agrees to excuse Landlord from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law. Resident(s) will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Resident(s), occupants, guests or invitees of Resident(s), or any pets.

17.    **NOTICES**: All notices under this Lease must be in writing and are effective only when hand-delivered, sent by mail, or sent by electronic transmission to:

a.    Resident(s) at the Property Address or email address provided in this Lease.

b.    Landlord at the Address for Notice or email address provided in this Lease. Resident(s) must promptly inform Landlord of any changes in Resident(s)' phone numbers (home, work and mobile) and email address from those provided in your Lease no later than a week (7 days) after any change.

18.    **DEFAULTS**:

a.    **Landlord Default**: If Landlord fails to comply with this Lease, Resident(s) may seek any relief provided by law.

b.    **Resident(s) Default** If Resident(s) fails to comply with this Lease or fails to timely pay any amounts due under this Lease, Resident(s) will be deemed in immediate Default, and:

i.    Landlord may terminate Resident(s)' right to occupy the Property by providing Resident(s) with or without written notice to vacate, pursuant to state law;

ii.    All unpaid rents which are payable during the remainder of this Lease or any renewal period will be accelerated without notice or demand

iii.    Subject to state law, Resident(s) will be liable for:

A.    any lost Rent

B.    all costs incurred in connection with reletting the Property, including, but not limited to, leasing fees/commissions, advertising fees, utility charges, and any other expenses reasonably incurred to relet the Property

C.    repairs needed to the Property, beyond normal wear and tear

D.    all costs associated with the eviction of Resident(s), including, but not limited to, attorneys' fees, court costs, cost of service, witness fees, and prejudgment interest

E.    all collection costs incurred, including, but not limited to, any administrative costs incurred in connection with Lease enforcement efforts, collection fees, late charges, and NSF charges

F.    any other recovery to which Landlord may be entitled under this Lease, by law or equity.

iv.    **NOTE: UNPAID RENT OR UNPAID PAYMENT FOR ANY OTHER AMOUNTS DUE UNDER THIS LEASE ARE REPORTABLE TO CREDIT REPORTING AGENCIES.**

19.    **ADDITIONAL RESIDENT(S) ACKOWLEDGEMENTS AND REPRESENTATIONS**: Resident(s)'s statements in this Lease and in any rental application are material representations. If Resident(s) makes a misrepresentation in this Lease or in any rental application, Resident(s) shall be in Default of this Lease. Each party to this Lease represents that he or she is of legal age to enter into a contract.

a.    **Suitability**: It is Resident(s)'s responsibility to determine, before signing this Lease, whether: (i) all services (e.g., utilities, connections, schools, and transportation) are available and accessible to and from the Property; (ii) such services are sufficient for Resident(s)' needs and wishes; and (iii) Resident(s) is fully satisfied with the Property's condition.

b.    **Responses to Requests**: Landlord is not obligated to respond to any requests for Resident(s)' rental payment history from a mortgage company or lender while Resident(s) is in breach or Default of any terms of this Lease, and Landlord is not obligated to respond to any requests for Resident(s)' rental payment history from another prospective landlord (i) until Resident(s) has given notice of Resident(s)' termination of this Lease and (ii) so long as Resident(s) is not in breach or Default of any terms of this Lease. Landlord may charge a reasonable fee for processing such request.  Resident(s)/Occupant(s) hereby authorizes Owner to release any information regarding Resident(s)/Occupant(s) as may be required by law or requested by governmental authorities or agencies, law enforcement agencies, courts, or others for marketing or similar purposes in accordance with the Landlord's Privacy Policy.

c.    **Binding**: This Lease is binding upon final acceptance and execution by the parties. READ ALL OF THE TERMS OF THIS LEASE CAREFULLY. If Resident(s) does not understand the effect of this Lease, Resident(s) should consult with an attorney before signing.

19.    **MILITARY PERSONNEL CLAUSE:** Resident may terminate the Lease Contract if enlisted or drafted or commissioned in the U.S. Armed Forces. Resident also may terminate the Lease Contract if: (1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and (2) you are either (i) given change-of-station orders to permanently depart the local area, (ii) deployed with a military unit for 90 days or more, or (iii) relieved or released from active duty. After Resident delivers to Landlord written termination notice, the Lease Contract will be terminated under this military clause, as provided under the Servicemembers Civil Relief Act. Resident must furnish Landlord a copy of your permanent change-of-station orders, call-up orders, or deployment orders or official letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After Resident move out, we'll return your security deposit, less lawful deductions. If you or any co-resident are a dependent of a Service member covered by the U.S. Service members Civil Relief Act, this Lease Contract may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the service member's military service. A co-resident who is not your spouse or dependent cannot terminate under this military clause. If you terminate the Lease Contract Under the Military Clause 14 or more days before occupancy, no damages or penalties of any kind shall be due.

20.    **DOMESTIC VIOLENCE CLAUSE: In instances of Domestic Violence at the Property where the victim seeks termination of the Lease, Landlord and Resident(s) must comply with state law.  Only the victim may seek termination of the Lease.**

21.    **MISCELLANEOUS**:

a.    There are no oral agreements between Landlord and Resident(s).

b.    This Lease which shall include any Addenda attached, and/or Landlord's Rules and Regulations (which are subject to change at Landlord's sole discretion) constitute the **Entire Agreement** between Landlord and Resident(s) regarding the Property and may not be changed except by written agreement.

c.    This Lease is binding upon and inures to the benefit of the Parties to this Lease and their respective heirs, executors, administrators, successors, and permitted assigns.

d.    All Resident(s) are jointly and severally liable for all provisions of this Lease.

e.    Landlord's past delay, waiver or non-enforcement of a Rent due date or any other right under this Lease will not be deemed to be a waiver of any other breach by Resident(s) or any other right of Landlord under this Lease.

f.    Should a court find any clause in this Lease unenforceable, the remainder of this Lease will not be affected and all other provisions of this Lease will remain in full force and effect.

g.    The laws of the state in which the Property is located shall govern the interpretation, validity, performance, and enforcement of this Lease.



DocuSign Envelope ID: 7D8F51D4153C7-4C80-960A-0B1BA7BED5E7



h.  Termination of Property Management Agreement: Any cancellation, expiration or other termination of the Property Management Agreement between Owner and Goal shall not affect the validity of this Lease or the obligations of the Parties. Upon termination of the Property Management Agreement, if applicable, Goal shall transfer the Security Deposit and any pet deposit to Owner, with confirmation of the same provided to Owner and Resident in writing. At such point, Goal shall have no further obligations or responsibilities under this Lease, including but not limited to the Security Deposit, pet deposit, owner or Resident service requests, or any other service or maintenance obligations. If Resident had made monthly Rent payments to Goal pursuant to this Lease, Resident shall no longer remit Rent payments to Goal. Resident and Owner shall mutually agree upon an acceptable method of Rent payment (made to Owner directly) following cancellation.

i.  Cancellation of the Property Management Agreement shall not relieve Resident of any obligation to pay Goal for any costs and fees incurred under this Lease.

j.  Subordination of Lease:  This Lease and Resident's interest hereunder are and shall be subordinate, junior, and inferior to any and all mortgages, liens, or encumbrances now or hereafter placed on the Premises by Owner, all advances made under any such mortgages, liens, or encumbrances (including, but not limited to, future advances), the interest payable on such mortgages, liens, or encumbrances and any and all renewals, extensions or modifications of such mortgages, liens, or encumbrances.

k.  Electronic Signature and Delivery: The Parties agree that the electronic signature of any Party on any document related to this transaction shall constitute a valid, binding, signature of such Party. The Parties further agree that electronic delivery of this Lease or any addenda thereto through e-mail or similar electronic means shall constitute sufficient delivery to the other Party.

<mark>[Signature Page to Follow]</mark>



**LANDLORD or Landlord's Agent:**

DocuSigned by:

By: _Saadai Walker_

Name: Saadai Walker

Title:

Date: Property Manager
Oct-15-2018 | 9:32:53 AM CDT

**RESIDENT(S):**   *All names listed above must sign below.*

DocuSigned by:

Name: Antonio Turner    Date: Oct-15-2018 | 8:30:23 AM CDT

_____
Name:                                      Date:

_____
Name:                                      Date:

_____
Name:                                      Date:

_____
Name:                                      Date:

_____
Name:                                      Date:

**Resident Emergency Contacts** (are not Parties to this Lease):

Sharon Turner                    404-671-0951
Name:                            Phone Number

Sheneka Turner                   678-789-1635
Name:                            Phone Number

GOAL – Georgia Renewal Lease 12-24mo July 2018                         7

DocuSign Envelope ID: 7D8F51D4153C7-4C80-960A-0B19A7B5D5E7



Effective Date: July 2018

LANDLORD'S RULES AND REGULATIONS

The following are Landlord's Rules and Regulations that apply to all Residents, Occupants, Guests and Invitees residing in or visiting the Property.  They are subject to change at any time at Landlord's sole discretion.  Please consult your local property management office if you have questions.  Resident acknowledges that Resident has read, understands and agrees to all of Landlord's Rules and Regulations.

1. Time is of the essence for the payment of Rent and strict compliance with rent due dates is required.

2. **NO SMOKING**.  Smoking is NEVER allowed inside the Property.  If Resident violates this **No Smoking Policy**, Resident will be in Default of the Lease and must reimburse Landlord's costs to remediate any smoke damage, including but not limited to treatment to remove stains and odors in the Property due to smoking inside the Property.  Landlord may also seek any remedy under state law.

3. **Pet Policy**: The following Rules apply for Residents with pets at the Property:
   - If the Property is subject to a Homeowners' Association, Resident will abide by all rules and regulations and Covenants, Conditions and Restrictions (CC&R's) with respect to pet ownership. Moreover, Resident will abide by all city and local ordinances regarding animal ownership (e.g., leashing, curbing, registration, waste removal, licensing, and vaccinations).
   - **Pet Fee:** Resident must pay a non-refundable pet fee of $300 per pet.
   - **Unauthorized Pets**: Any pet residing permanently or temporarily that is not listed in this Lease is an unauthorized pet which will subject Resident to the following:
     i. **Restricted breeds include the following, but Landlord may restrict other breeds at its sole discretion:**
        A. Pit bulls and pit bull mixed breeds
        B. Rottweilers
     ii. Default of the Lease and exercise of Landlord's remedies under the Terms of this Lease and under applicable state law;
     iii. Penalties in the amount of $<u>300</u> and $<u>25</u> per day thereafter per unauthorized pet for each day the unauthorized pet resides at the Property; and
     iv. Resident's reimbursement to Landlord's costs for the following:
        A. exterminate the Property for fleas and other insects;
        B. clean and deodorize the Property's carpets and drapes;
        C. clean and deodorize ductwork to eliminate pet dander and other pet allergens; and/or
        D. repair any damage to the Property caused by the unauthorized pet.

4. Use of Property: The Property is for residential purposes.  No commercial activities are allowed on/at/near the Property without Landlord's written permission.  Only Residents are allowed to reside at the Property. Persons not listed on the Lease are NOT to reside at the Property longer than 14 days, without Landlord's written permission.

5. **Restrictions on Non-Living Spaces:** Resident acknowledges they might have access to attics, crawlspaces, storage areas, and basements ("Non-Living Spaces").  Resident agrees that access to such areas is taken at the risk of the Resident, and agrees not to jeopardize personal safety by standing, storing property, or placing any weight on non-weight bearing surfaces and accepts all liability to personal harm or destruction of property from doing so.  Resident agrees not to store personal property in a manner that does not allow any mechanical components of the home to operate properly, or possesses a risk of fire at the premises.



GOAL - Georgia Landlord's Rules and Regulations July 2018

DocuSign Envelope ID: 7D8F51D4E5C7-4C80-960A-0B1BA7BED5E7

Moreover, any personal property stored in Non-Living Spaces is at Residents', Occupants', Guests'; and/or Invitees' own risk.

6. **Mold Written Notice**: When dealing with Mold, there are responsibilities for both Resident and Landlord. Please refer to and read the EPA's **A Brief Guide to Mold, Moisture, and Your Home**: https://www.epa.gov/sites/production/files/2016-10/documents/moldguide12.pdf

- Resident shall report to the Landlord immediately in writing if Resident notices:
    - i. visible or suspected mold, air conditioning or heating problems, musty odors, leaky faucets, roof leaks, and/or plumbing accidents
    - ii. any discoloration of walls, baseboards, doors, window frames, or ceiling
- If Resident fails to comply with the above notice requirement, Resident may be held responsible for all damage to the property and any health problems that may develop.
- If Resident requests a mold test and said test results in levels of mold consistent with the types and concentrations found outside the Property and/or if no evidence of toxic mold (such as  Cladosporium, Penicilium, Fusarium, Aspergillus, and Stachybotrys) are found, Resident will be charged for the cost incurred for testing.
- Mold is found virtually everywhere in our environment—both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores. All of us have lived with mold spores all our lives. Without molds we would all be struggling with large amounts of dead organic matter. Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside a dwelling, mold can grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for person with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken.
- Keep your dwelling clean—particularly the kitchen, the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away moldy food.
- Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines. Turn on any exhaust fans in the bathroom and kitchen before you start showering or cooking with open pots. When showering, be sure to keep the shower curtain inside the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.
- Promptly notify Landlord in writing about any air conditioning or heating system problems you discover. Follow Landlord rules, regarding replacement of air filters (every 30 days minimum). Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your dwelling dry out.
- Promptly notify Landlord in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Agreement to repair or remedy the situation, as necessary.
- Set Thermostat to no higher than 75 degrees in the summer months to keep air circulating.





- TO AVOID MOLD GROWTH, it is important to prevent excessive moisture buildup in your dwelling. Failure to promptly pay attention to leaks and moisture that might accumulate on dwelling surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:
    i. rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level
    ii. overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines
    iii. leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;
    iv. washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;
    v. leaks from clothes dryer discharge vents (which can put lots of moisture into the air); and
    vi. insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

- IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON NON-POROUS SURFACES (such as ceramic tile, Formica, vinyl flooring, metal, wood or plastic),
    i. The federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water
    ii. Let the surface dry, and then within 24 hours apply a pre-mixed, spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold). Tilex® and Clorox® contain bleach which can discolor or stain applied surfaces. Be sure to follow the instructions on the container.
    iii. Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.
    iv. Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be used to help remove non-visible mold products from porous items, such as fibers in sofas, chairs, drapes and carpets—provided the fibers are completely dry.
    v. Machine washing or dry cleaning will remove mold from clothes.

- DO NOT CLEAN OR APPLY BIOCIDES TO:
    i. visible mold on porous surfaces, such as sheetrock walls or ceilings or
    ii. large areas of visible mold on non-porous surfaces. Instead, notify Landlord in writing, and Landlord will take appropriate action.

- COMPLIANCE. Complying with these guidelines will help prevent mold growth in the dwelling, and both Resident and Landlord will be able to respond correctly if problems develop that could lead to mold growth.

- If you have questions regarding these guidelines, please contact the Landlord.

- If you fail to comply with this these guidelines, you may be held responsible for property damage to the dwelling and any health problems that may result.



DocuSign Envelope ID: 7D3F51D4153C7-AC80-960A-0B19-A7BED5E7



7. **Yard Maintenance**: Resident is responsible for all yard Maintenance. Unless prohibited by ordinance, law or homeowners' association rules, Resident will water the yard at reasonable and appropriate times and maintain the appearance of the yard including all lawns, shrubbery, bushes, flowers, gardens, and any other landscaping features and foliage on or encroaching on the Property or on any easement appurtenant to the Property. This does not include common areas maintained by a homeowners' association.

8. **Crime Policy:** Resident shall not commit or permit to be committed any unlawful act in or about the Premises. Nor shall Resident permit the Property to be used for a boarding or lodging house, for rooming school purposes, for instruction of music or for any purpose or in any manner which will increase Owner's insurance rate. Nor shall Resident permit the Property to be used for any purpose or in any manner which will injure the reputation of Owner or its Property or which will annoy, obstruct, or interfere with the rights and peaceful occupancy of the other Residents of the building or the inhabitants of the neighborhood.

9. **Marijuana Policy**: Residents/Occupants are not permitted to grow or cultivate any marijuana plants on the Property under any circumstances. Furthermore, Residents are not allowed to use, possess, or distribute marijuana for medical or recreational use on the Property in accordance with applicable Federal Laws under the Controlled Substance Act. This Marijuana Policy is governed by Federal Law exclusively and will supersede any provision in the Lease that states that the Lease is governed by controlling state law.

10. **Contact Information**: Resident must promptly inform Landlord of any changes in Resident's phone numbers (home, work and mobile) and email address from those provided in this Lease no later than a week (7 days) after any change.

11. **Access by Landlord**:
    - **Signs and Advertising**: Landlord may prominently display a "For Sale", "For Lease", "For Rent" or similarly worded sign on the Property at any time during the Term of this Lease or any renewal period. In addition, Landlord or Landlord's agents may take exterior photographs or images of the Property and use the photographs or images in advertisements to lease or sell the Property.
    - **Access**: Before accessing the Property, Landlord or anyone authorized by Landlord will  first contact Resident by providing 24-hr notice,  and may enter the Property between the hours of 8:00 am and 6:00 pm to make repairs that Resident has made Landlord aware of and has requested Landlord to address.  Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Resident and without notice for the following only:
        i. to survey the Property's condition and take photographs to document the condition of the Property for evictions and for reported nuisances and/or disturbances at the Property
        ii. to make emergency repairs
        iii. to exercise a contractual or statutory lien
        iv. to deliver written notices required by state law
    - **Notice**:  Landlord may enter the Property upon advanced notice required under state law, for routine and ordinary inspections, repairs, maintenance, and improvements.

12. **Homeowners Associations** ("HOAs"): Resident acknowledges that Resident has received, read, understands and accepts the HOA rules and regulations.  Resident will reimburse Landlord for any fines or other charges assessed against the Property or Landlord for Resident's failure to comply with any such rules or covenants.



DocuSign Envelope ID: 7D3F51D41E3C7-AC80-960A-0B18-A7BFD5F7



13. **Parking Policy**: Resident is permitted to park at the Property subject to HOA/local rules and laws. Resident may not park or permit any person to park any vehicles on the grass or on the front, back, or side yard. Resident may permit vehicles to be parked only in driveways, garages, designated common parking areas, or in the street against the curb adjacent to the Property, if not prohibited by law or any HOA rule. Resident may park boats, RVs, trailers, jet skis, snow mobiles and recreational vehicles in the garage only with the garage door closed. Resident may not store or permit any person to store any vehicles on or adjacent to the Property or in the street against the curb adjacent to the Property. All vehicles must have current registration tags and license plates. In accordance with applicable state/local laws, Landlord may tow at Resident's expense:

- any inoperative vehicle on or adjacent to the Property;
- any vehicle parked in violation of any parking rules;
- any vehicle parked in violation of any law, local ordinance, or HOA rule.

14. **Security Devices and Exterior Door Locks**: All requests made by Resident to rekey or change, install, repair, or replace security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Resident shall be at Resident's cost and may be installed only by contractors engaged and authorized by Landlord.

15. **Smoke Detectors and Fire Alarms**: The Property is equipped with smoke/fire alarms in accordance with applicable state/local laws. Disconnecting or intentionally damaging a smoke/fire alarm or removing a battery without immediately replacing it with a working battery may subject Resident to civil penalties and liability for damages. In addition, tampering with or removing such alarms is a Resident Default.

16. **Flammable Items:** Resident shall not keep on the Property any item of a dangerous, flammable, or explosive character that might unreasonably increase the danger of fire or explosion on the Property, or which might be considered hazardous by any responsible insurance company – e.g. fireworks, gasoline cans or drums, and gun powder.

17. **Replacement of Property Fixtures and Appliances**: Landlord reserves the right to replace the fixtures on the Property with similar items, at Landlord's sole and absolute discretion. Landlord does not have to replace the fixtures with the exact brand, style, grade, color or accessories, so long as the replacement fixture is fit for its use. Moreover, replacement of Property fixtures is voided by Landlord if the fixture's malfunction was caused by Resident's negligence or intentional act.

18. **Satellite Dishes and Antennas:** No article, TV antenna, or other property or device shall be suspended or protruded outside of the building or placed on the window sills thereof without Landlord's written consent.

19. **Resident Responsibility VS Landlord Responsibility**
- Resident is held responsible for certain items specified per the lease as the Landlord will be responsible for other items. An outline of responsibilities is provided in the below chart (additional items may be set forth in the Lease).
- Landlord will not be held responsible for repairs of Property due to Resident's, Occupant's, Invitee's, or Guest's negligence or misconduct.
- Resident damage (beyond normal wear and tear) repairs may be completed by LANDLORD but charged back to the Resident's ledger as determined by LANDLORD
- Report all major maintenance and repair issues in a timely manner. Failure to do so could result in additional damage which may be considered Resident responsibility



GOAL - Georgia Landlord's Rules and Regulations July 2018

**GOAL PROPERTIES**®
FINDING THE RIGHT HOUSE FOR YOUR HOME

i.    Responsibility Chart

|  | RESIDENT RESPONSIBILITIES | LANDLORD RESPONSIBILITIES |
|---|---|---|
| EXTERIOR | • Lawn and landscaping maintenance (watering, mowing, weed removal, raking leaves etc.)<br>• Shrub and tree trimming (under 10')<br>• Trash disposal<br>• Proper storage of trash containers (in the garage, behind a fence, or out of site)<br>• Oil stains in driveway<br>• Cleaning of any pools or spas<br>• Repair of any Resident caused damage | • Fence repairs due to normal wear and tear<br>• Roofing issues and repairs<br>• Garage door maintenance<br>• Removal or trimming of trees (above 10')<br>• Irrigation repairs<br>• Repair of pool equipment<br>• Cleaning gutters<br>• Pressure washing |
| INTERIOR | • Changing air filters<br>• Changing light bulbs<br>• Changing batteries in smoke detectors, carbon monoxide monitors, garage remotes, and thermostats<br>• Routine Pest control and extermination per lease specifications<br>• Proper use of gas, electrical and plumbing fixtures<br>• General cleaning<br>• Repair of broken glass, screens and door frames<br>• Odor and damages caused by pets<br>• Prevention of mildew and discoloration in wet areas (bathrooms, kitchen, laundry)<br>• Winterization<br>• Repair of any Resident/Guest/Invitee caused damage | • Heating and air conditioning not working correctly<br>• Repair of electrical systems<br>• Repair of appliances not working properly<br>• Pest control for termites, carpenter ants and other wood destroying insects and other specified pests per the pest policy<br>• Repair of inoperable doors and windows |
| PLUMBING | • Repair of clogged drains and toilets unless caused by roots or structural breakdown<br>• Repair of jammed garbage disposal<br>• Repair of any Resident/Guest/Invitee caused damage | • Repair of inoperable garbage disposal<br>• Plumbing leaks<br>• Repair of major plumbing and sewer septic systems caused by roots or structural breakdown<br>• Plumbing hardware<br>• Water heater issues |
| HOA | • Lawn Care<br>• Appropriate Trash Can Stowage<br>• Observing Parking Restrictions<br>• Excess Debris in the yard or driveway<br>• Pet Etiquette<br>• Driving Recklessly<br>• Unregistered Vehicles<br>• Noise Complaints<br>• HOA Violation Fines<br>• Repair of any Resident/Guest/ Invitee caused damage | • HOA Dues |

DocuSign Envelope ID: 7D3F51D4153C7-AC80-960A-0B19A7B5D5F7



20. **Pest Control Policy Chart**

  - Resident is responsible for all normal insect control and maintenance during the term of the lease pursuant to the following guidelines. For Landlord Responsibility items, Resident will be required to submit photo documentation prior to dispatch.

| DESCRIPTION | RESIDENT RESPONSIBILITY | LANDLORD RESPONSIBILITY |
|---|---|---|
| Treatment of Ants, Spiders, Roaches and other Small Pests | ✓ | During 1st 30 days of Lease Only |
| Treatment of Bed Bugs | ✓ | During 1st 48 Hours of Lease Only |
| Removal and Trapping of Small Rodents | ✓ | During 1st 30 days of Lease Only |
| Removal and trapping of Birds, Bats, Raccoons & Squirrels found inside the home or are causing a health issue | | ✓ |
| Removal of Wasps & Bees with identifiable hives that exist anywhere within the property | ✓ | During 1st 30 days of Lease Only |
| Treatment of Termites, Carpenter Ants or other wood destroying insects identified within the home | | ✓ |
| Removal of Snakes, Lizards & Other Pests | ✓ | |

21. **Additional Resident Guidance**

  - **Winterizing your home:**
    - i. Turn Off Irrigation Sprinklers.
    - ii. Locate Water Shut-off valves in case of burst pipes

  - **Failure to Comply:**
    - i. Failure to maintain the landscaping and trees on the property pursuant to the *Yard Maintenance Policy* is a violation of the lease agreement. In such cases, Landlord may take over the regular landscaping maintenance and the Resident will be charged $75 per violation.

  - **Service Level Expectations**
    - i. Urgent Repairs:
      Service technicians make all attempts to schedule the 1st visit within 3 days of submittal. Emergency Repairs (a subset of Urgent Repairs) should typically be addressed same day whenever possible.
    - ii. Non-Urgent Repairs:
      Service technicians make all attempts to schedule the 1st visit within 7 days of submittal. Non-urgent repairs are typically performed by our qualified in-house service technicians.
    - iii. Missed Appointments:
      Resident may be charged a trip fee for failure to be present during the agreed upon scheduled date and time. Trip charge is $50.
    - iv. Life-threatening Emergencies:
      Call 911 immediately. Contact Landlord to alert of issue.



GOAL - Georgia Landlord's Rules and Regulations July 2018



- **Security Deposit:**
  i. Prior to your move-out, Landlord will perform a pre-move out inspection comparing the condition of the home at the time of move out to the condition of the home when the Resident moved in. The lease agreement requires Residents to return the home in a clean and undamaged condition. If any damage or neglect is discovered at the Property beyond reasonable wear and tear, the full cost to correct the issue will be charged to the Resident.

There are a few things the Resident can do to help maximize the return of your security deposit, including:

- Request a Pre-Move Out Inspection
- Return all keys, garage remotes and any other devices provided at the time of move-in
- Leave the home in the same condition as when you moved in
- Thoroughly clean the home and remove all trash and personal belongings
- Ensure the carpets are professionally steam cleaned after all belongings have been removed with a copy of the receipt to the Landlord

**Paint:**
Painted areas are assessed and charged on a wall-by-wall basis.
- Use "Magic" Erasers to clear scuffs and baseboards.
- Leave painted areas clean, free from stains, major scuffs, scrapes, and holes. Remove all nails.
- Painted areas should be repainted from corner to corner with LANDLORD approved paint and any holes should be patched to match existing texture. If matching paint cannot be located in the home, contact the Landlord for the appropriate paint color.
- Failure to follow these guidelines can result in charges typically ranging from $150 - $1,500.

**Flooring:**
- Professionally clean carpets prior to move out.
- Resident will deliver to Landlord a receipt for professional carpet cleaning for all carpeted areas, and failure to do so will result in a deduction from the Security Deposit,
- Resident will be charged to clean carpets if carpets are not cleaned properly.
- Resident will be charged for carpet replacement for any damage such as rips, un-cleanable stains, and pet odors.
- Carpet damage can result in charges ranging from $150 - $2,000.
- Clean all vinyl and tile flooring prior to move out.
- Resident will be charged for chipped tile or torn or severely stained vinyl.
- Failure to professionally steam clean carpets can result in charges ranging from $50 - $350.

**Landscaping:**
- Yards must be mowed regularly.
- Bushes must be kept in well- trimmed condition.
- Remove all trash and debris from yard.
- Resident will be charged to bring yards back to compliance if left overgrown or not maintained per the lease agreement.
- Failure to follow these guidelines can result in charges ranging typically from $50 -$1,000.

**Driveways, Garages & Exterior:**
- Leave driveways and garages free of oil stains.
- Resident will be charged for pressure washing to remove stains.
- All debris and trash must be removed from premises.
- Failure to follow these guidelines can result in charges ranging typically from $50 - $500.



DocuSign Envelope ID: 7D3F51D4153C7-4C80-960A-0B1BA7BED5E7



**Heating and Cooling Systems:**
- Residents are required to replace AC filter every 30 days during their lease. Failure to replace filter can cause damage to the HVAC system.
- Resident will be charged for any repair or cleaning needed to HVAC fan due to failure to change filter.
- Failure to follow these guidelines can result in charges ranging typically from $50 - $2,500.

**Window Blinds & Screens:**
- Leave window blinds and existing screens in place, undamaged, and operational.
- Resident will be charged for blinds or screens that need to be replaced.
- Failure to follow these guidelines can result in charges ranging typically from $50 - $300.

**Light Bulbs, Switch Plates & Outlet Covers:**
- Leave home with all light bulbs in working order and all switch plates and outlet covers clean.
- Failure to follow these guidelines can result in charges ranging typically from $10 - $100.

**Appliances:**
- Leave all appliances emptied, clean, and free of damage such as dents or broken parts.
- Resident will be charged a cleaning fee of $35 per appliance if not cleaned properly.
- Resident will be charged for any repairs or full replacement of appliance if caused by Resident, Invitees, Occupants, or Guests if it cannot be repaired.
- Failure to follow these guidelines can result in charges ranging typically from $35 -$1,500.

**Cleaning & General Repairs:**
- Leave interior of home clean including window glass & sills, walls, floors, ceiling fans, doors, cabinets, counters, sinks, bathtubs, and showers.
- Failure to clean the home will result in a cleaning fee based on overall condition and size of home.
- Failure to follow these guidelines can result in charges ranging typically from $150 - $350

**Pet Related Damage:**
- Correct any damage caused by pets, including chewed up doors, damaged flooring, holes in the yard, pet smells and odors, etc.
- Failure to follow these guidelines can result in charges ranging typically from $150 - $2,000.

**Smoking Damage:**
- Residents are prohibited from smoking inside the home.
- Resident will be charged for any damage found in relation to smoking such as odor, discoloration, or burns.
- Failure to follow these guidelines can result in charges ranging typically from $150 - $2,000.

**Optional Installed Equipment:**
- Installation and removal of the following equipment is the Resident's responsibility;
- Satellite Dish, Cable Box, Phone Jack, Water Softener, Water Filter, Alarm System
- Failure to remove Resident installed equipment prior to lease termination can result in removal charges ranging from $50 - $300.

**22. Special Features (applicable to some homes)**

• **Wells**
   Some homes are equipped with a private water supply system, also referred to as a well.  A well is a pipe drilled into the ground to reach an aquifer flowing beneath the property.  The equipment used to bring the water to the surface requires care as does maintaining the property properly to keep from contaminating the water below the soil.



GOAL - Georgia Landlord's Rules and Regulations July 2018

DocuSign Envelope ID: 7D3F51D4153C7-AC80-960A-0B19A7B5D5E7



Please report any of the following to your property manager immediately as they may indicate service to the well system is needed:

i. Change in taste, odor or appearance of the water supply
ii. Anytime hazardous materials have been spilled on the property that could potentially contaminate the water supply (paint, fertilizer, pesticides, motor oil, etc.)
iii. If you have experienced a drop-in pressure

Well equipment does require power to operate. If your power is out, your water service will not be available until the power resumes.

- **Septic System**
  Some homes are equipped with a private sewer system, also referred to as a Septic System.  A septic tank is a living filter that separates scum, solids and pretreats wastewater before it flows out into the drain-field for final purification. It takes 24 to 48 hours for this process. The septic tank is a large, underground, watertight container. All the wastewater from your toilet, bath, kitchen and laundry flows into the tank. Heavy solids settle to the bottom of the where bacteria reduce them to sludge and gasses. Lighter solids such as grease rise to the top and form a scum layer. Solids that do not decompose remain in the tank. Periodic pumping of the septic tank will remove the accumulated solids.  Pumping occurs every 3-5 years. Water leaving the septic tank filters through a series of pipes into the yard.  This allows the liquid to trickle out and be absorbed into the soil.

  Please report any of the following to your property manager as they may indicate service to the septic system is needed:

  i. Odors, surface sewage, wet spots or lush vegetation growth in the area of the drain field
  ii. Plumbing back ups
  iii. Gurgling sounds in the plumbing system
  iv. Slow draining fixtures

  Do report any leaking faucets, running toilets or other water supply issues to your property manager immediately. Excessive water into the system can flush out the enzymes required for the system to work properly.

  Do not put any of the following items into your drains/septic system:
  - Fats or grease
  - Motor oils or fuels
  - Disposable diapers or baby wipes
  - Coffee grounds, egg shells, nut shells
  - Sanitary napkins, tampons or condoms
  - Paper towels, facial tissues or rags
  - Cigars or cigarette butts
  - Paints or chemicals
  - Drain cleaners, floor cleaners, toilet bowl cleaners, paints solvents, waxes, polishes, coating or strippers. Normal amounts of standard household cleaners are ok.

  These products may destroy important bacteria in the septic tank and contaminate ground and surface water.

  Do not use a garbage disposal.

  Do not discharge hot tub, swimming pool, water softener or water purification systems or sump pumps into a septic system

  Do not enter the septic tank for any reason. Septic tanks contain hazardous gases due to the waste decomposition process taking place.  Only a qualified septic repair professional should work on the septic system of the home.



GOAL - Georgia Landlord's Rules and Regulations July 2018

DocuSign Envelope ID: 7D3F51D4153C7-AC80-960A-0B19A7BED5E7



- **Pool/Hot Tub/Spa**
  Some homes are equipped with an inground swimming pool, spa, and/or hot tub.

  Resident will use the swimming pool, spa and/or hot tub at Resident's own risk. Landlord will not be responsible for any injuries sustained by Resident, occupants, invitees, or guests when using the swimming pool, spa and/or hot tub

  Resident is responsible for keeping the pool/spa/hot tub areas neat and clean of debris on a daily basis. The pool, and all equipment, should be in the same condition on the day of move out as it was delivered to the Resident on the day of move in. If you are unfamiliar with caring for a pool, below are a list of basic guidelines, however, we do recommend you consult a qualified pool servicing company or your property manager for assistance should you have any questions.

  No pets of any kind are permitted in the swimming pool, spa and/or hot tub at any time.

  Landlord will conduct a monthly inspection of the pool/hot tub/spa. Items related to the pool not maintained may be charged to the Resident at Landlord's discretion.

  **Pool Maintenance (In Season):**
  - Check the pool's PH level and chlorine level 2 times per week. Follow the proscribed chemical levels per your area pool service company. Always test the water levels at least 4 hours after all swimmers have left the water and at least 8 hours after a rain or wind storm.
  - Clean the pool at least one time per week. Empty the skimmer baskets, skim the leaves and debris from the water, vacuum debris from the bottom of the pool. Apply surface cleaner to the walls of the pool at the water line with a pool brush. Also, brush any areas that do not have good water flow such as around steps, corners, etc.
  - Shock the pool one time per week. This will eliminate algae and other contaminants. Follow the instructions on the product you have chosen. Always run the pump and filter for at least 12 hours after shocking the pool and do not swim in the pool for 24 hours after shocking the pool. If unsure of "Shocking" method, please contact Landlord.
  - Run the filtration system as much as possible. Water that is moving is less likely to be tainted with dust, dirt, environmental pollutants, body oils and bacteria.
  - Keep the pump and motor uncovered when in use

  **Pool Maintenance (Off Season):**
  - Test the water's chemical levels and adjust accordingly following the same procedures as in Season care.
  - Remove all objects from the pool when closing for the season. This includes toys, ladders, skimmer baskets, etc.
  - Drain all water from the pool's pump, filter, heater and all tubing. If water remains in the system and freezes, damage will occur.
  - Lower the pool's water level by draining the water into the local sewer line. Do not drain all the water from the pool. Reduce the water level only so it is below the pool's lowest return.
  - Cover the pool with a safety cover for the season.
  - Cover the filtration system for the season.

  WARNING: If you're unsure of the types and amounts of chemicals you need to add to your pool water, consult a local pool expert. Haphazardly adding chemicals can seriously alter the water's chemical balance, making it dangerous to swimmers.

DocuSign Envelope ID: 7D3F51D4E3C7-AC80-960A-0B1DA7BED5E7



- **Boiler**

Some homes are equipped with a hot water heating system. This system utilizes steam to heat your home.

It is important for you to know the location of the following items on your heating system and for you to monitor these items during the heating season:
i.   Steam Pressure Gauge
ii.  Safety Valve
iii. Water Level Gauge

"Knocking and clanging" are a common issue with hot water heating systems that can be resolved by a few minor adjustments. If you experience knocking or clanging of your heating system, please try the following:
i.   Make sure the radiator is sloped slightly toward the steam inlet pipe (where it comes out of the wall or floor). If the radiator is not sloped that direction, add a small piece of wood, a shim, under the fee at the vent end.
ii.  Check the position of the inlet valves. The valves should be all the way open or all the way closed. A partially open or shut valve will often cause a knocking and clanging sound.

Please notify your property manager immediately if you notice the following:
i.   Most boilers run on 12-15 #'s of pressure. If your steam pressure gauge reads over 30 #'s of pressure, this may signify a serious problem. Shut down the system and contact your property manager for service.
ii.  If you ever see water draining/leaking out of the pressure relief valve or the system.
iii. If an inlet valve is leaking, contact your property manager immediately to prevent water damage to the home.
iv.  No water is visible in the water level gauge



DocuSign Envelope ID: 7D3F51D4153C7-AC80-960A-0B18-A7B5D5F7

Effective Date: July 2018

### OFAC COMPLIANCE ADDENDUM

The following terms and conditions are incorporated and made a part of the Lease:

1.    Resident represents and warrants that (i) Resident is not: (1)  currently identified on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Assets Control, Department of the Treasury ("**OFAC**") and/or any other similar list maintained by OFAC pursuant to any authorizing statute, executive order or regulation (collectively, the "**List**"), or (2)  a person or entity with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, regulation, or Executive Order of the President of the United States; (ii) none of the funds or other assets of Resident constitute property of, or are beneficially owned, directly or indirectly, by any Embargoed Person (as hereinafter defined), (iii) no Embargoed Person has any interest of any nature whatsoever in Resident (whether directly or indirectly), (iv) none of the funds of Resident have been derived from any unlawful activity with the result that the investment in Resident is prohibited by law or that the Lease is in violation of law, and (v) Resident has implemented procedures, and will consistently apply those procedures, to ensure the foregoing representations and warranties remain true and correct at all times. The term "Embargoed Person" means any person, entity or government subject to trade restrictions under U.S. law, including but not limited to, the International Emergency Economic Powers Act, 50 U.S.C. §1701 et seq., The Trading with the Enemy Act, 50 U.S.C. App. 1 et seq., and any Executive Orders or regulations promulgated thereunder with the result that the investment in Resident is prohibited by law or Resident is in violation of law.

2.    Resident agrees (i) to comply with all requirements of law relating to money laundering, anti-terrorism, trade embargos and economic sanctions, now or hereafter in effect, (ii) to immediately notify Landlord in writing if any of the representations, warranties or covenants set forth in this paragraph or the preceding paragraph are no longer true or have been breached or if Resident has a reasonable basis to believe that they may no longer be true or have been breached, (iii) not to use funds from any "Prohibited Person" (as such term is defined in the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) to make any payment due to Landlord under the Lease and (iv) at the request of Landlord, to provide such information as may be requested by Landlord to determine Resident's compliance with the terms hereof.

3.    Resident agrees that Resident's inclusion on the List at any time during the Term shall be a material default of the Lease. Notwithstanding anything herein to the contrary, Resident shall not permit the Property or any portion thereof to be used or occupied by any person or entity on the List or by any Embargoed Person (on a permanent, temporary or transient basis), and any such use or occupancy of the Property by any such person or entity shall be a material default of the Lease.

DocuSign Envelope ID: 7D8F51D4153C7-AC80-960A-0B1BA7BED5E7

**Effective Date: July 2018**

### BED BUGS NOTICE

This Bed Bugs Notice, which may or may not be required by law depending on the state in which the Property resides, is incorporated and made a part of the Lease.

i.    *Acknowledgement*.   To the extent that there have been any reported instances of bed bug infestations in the Property, Landlord has had the Property treated by a licensed pest control company, at the conclusion of which the Property was found to be free of bed bugs.  Resident has inspected the Property and acknowledges that Property has **NO BED BUGS** at the execution of this Lease.

ii.    *No History of Bed Bug Infestations*.  Resident hereby acknowledges to Landlord that Resident is not moving from or has been in contact with any sort of bed bug infestation from any prior residency in the eighteen (18) months before the execution of this Lease;

iii.    *Responsibilities and Delivery of Possession*.  Resident agrees that any infestation of bed bugs in the Property shall constitute damage to and defacement of the Property.   In consideration of the disclosures provided herein, if the Property becomes, or is discovered to be, infested with bed bugs at any time during the Term of this Lease, any renewal term hereof, or between Resident's Move-out and Landlord's possession of the Property, such infestation shall be conclusively presumed to be caused by Resident, and in such an event, Resident agrees that Resident shall be responsible for any costs and/or damages incurred by Landlord as a result of such bed bug infestation, including, but not limited to, the cost of treatment for the Property as recommended by a qualified and licensed pest control company engaged by Landlord in its sole discretion.  Furthermore, Landlord may declare Resident in default of the Lease and pursue any and all remedies available to Landlord for default at law or under the Lease.

iv.    *Indemnification*.   Under no circumstances shall Landlord and or agents of Landlord be held responsible for any of Resident's losses, damages or expenses, including, but not limited to, special, consequential or punitive damages arising out of a bed bug infestation, inspection or treatment. Additionally, Resident agrees to indemnify and hold harmless the Landlord, its affiliates, agents and employees from any actions, claims, losses damages and/or expenses (including, but not limited to, attorney's fees) that Landlord may incur as a result of a bed bug infestation, inspection or treatment. This indemnification shall not apply if such damages, costs, losses, or expenses are directly caused by the negligence of the Landlord.

DocuSign Envelope ID: 7D8F51D4E3C7-4C80-960A-0B19A7BED5F7

**Security Deposit Addendum – Georgia**

A.  On or before the execution of this Lease, Resident must pay a security deposit to Landlord in the amount of $ __$714.00__ by cashier's check or money order.

B.  Security deposit will be held at **BANK OF AMERICA** (financial institution).

C.  No interest or income will be paid to Resident on the security deposit.  Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord.

D.  Refund: Resident must give Landlord at least 90 days written notice of surrender before Landlord is obligated to account for or refund the security deposit.  Any refund of the security deposit will be made payable to all Residents named under this Lease.  It is the responsibility of the Residents to work out any and all apportionments among themselves.  Landlord is NOT required to issue separate refunds to each Resident.

E.  Georgia law does not require Landlord to return or account for the security deposit until the Resident moves out from the Property ("surrender") and gives the Landlord written notice of the Resident's forwarding address; after which the Landlord has 30 **days** in which to mail any refunds and a written statement listing the exact reasons for the retention of any portion of the security deposit by first class mail to the Resident's address included in Resident's written notice or to Resident's last known address, if no written notice.  (For this purpose only, Resident's email shall constitute permissible written notice.)

F.  Deductions:

    i.   Landlord may deduct reasonable charges from the security deposit for:
         a.  damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
         b.  unpaid or accelerated rent;
         c.  unpaid late charges;
         d.  unpaid pet rents, charges or unauthorized pet fines;
         e.  unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property to prevent damage to the Property;
         f.  replacing unreturned keys, garage doors openers, security devices, or other Property fixtures – i.e., microwaves, ovens, stoves, etc.;
         g.  Landlord's cost to access the Property if made inaccessible by Resident;
         h.  attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Resident;
         i.  mailing costs and administrative costs associated with sending notices to Resident for any violations of this Lease; and
         j.  cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord.

    ii.  If deductions exceed the security deposit, Resident must pay to Landlord the excess within 10 days after Landlord makes written demand to Resident.



# GOAL Properties - Atlanta

**Lease: Turner, A.**
**Contact: Antonio Turner**

**Property Address: 8880 Ashton Rd**
**Jonesboro,GA 30238-4797**

| Balance as of 12/27/2021 | Prepayments | Total Unpaid | Deposit Held |
|---|---|---|---|
| **$19,822.46** | **$0.00** | **$20,746.96** | **$714.00** |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| | Unpaid Charge | 01/01/2022 | | 37200 - Other Income:Tenant Li… | | | $13.50 | | $20,746.96 |
| | Unpaid Charge | 01/01/2022 | | 33100 - Lease Income:Rent Inco… | | | $911.00 | | $20,733.46 |
| ↻ | Unpaid Charge | 12/27/2021 | | 33250 - Other Income:Late Fee : Calculated on 12/27/2021 5:09 AM by system | | | $190.00 | | $19,822.46 |
| ↻ | Unpaid Charge | 12/01/2021 | | 37200 - Other Income:Tenant Li… | | | $13.50 | | $19,632.46 |
| ↻ | Unpaid Charge | 12/01/2021 | | 33100 - Lease Income:Rent Inco… | | | $911.00 | | $19,618.96 |
| ↻ | Unpaid Charge | 11/30/2021 | | 33250 - Other Income:Late Fee : Calculated on 11/30/2021 5:11 AM by system | | | $205.00 | | $18,707.96 |
| ↻ | Unpaid Charge | 11/01/2021 | | 37200 - Other Income:Tenant Li… | | | $13.50 | | $18,502.96 |
| ↻ | Unpaid Charge | 11/01/2021 | | 33100 - Lease Income:Rent Inco… | | | $911.00 | | $18,489.46 |
| ↻ | Unpaid Charge | 10/31/2021 | | 33250 - Other Income:Late Fee : Calculated on 10/31/2021 5:10 AM by system | | | $210.00 | | $17,578.46 |
| ↻ | Unpaid Charge | 10/01/2021 | | 37200 - Other Income:Tenant Li… | | | $13.50 | | $17,368.46 |
| ↻ | Unpaid Charge | 10/01/2021 | | 33100 - Lease Income:Rent Inco… | | | $911.00 | | $17,354.96 |
| ↻ | Unpaid Charge | 09/30/2021 | | 33250 - Other Income:Late Fee : Calculated on 09/30/2021 5:11 AM by system | | | $205.00 | | $16,443.96 |
| ↻ | Unpaid Charge | 09/01/2021 | | 37200 - Other Income:Tenant Li… | | | $13.50 | | $16,238.96 |
| ↻ | Unpaid Charge | 09/01/2021 | | 33100 - Lease Income:Rent Inco… | | | $911.00 | | $16,225.46 |

| Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|
| ↻ Unpaid Charge | 08/31/2021 | | 33250 - Other Income:Late Fee : Calculated on 08/31/2021 5:10 AM by system | | | $210.00 | | $15,314.46 |
| ↻ Unpaid Charge | 08/01/2021 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $15,104.46 |
| ↻ Unpaid Charge | 08/01/2021 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $15,090.96 |
| ↻ Unpaid Charge | 07/31/2021 | | 33250 - Other Income:Late Fee : Calculated on 07/31/2021 5:12 AM by system | | | $210.00 | | $14,179.96 |
| ↻ Unpaid Charge | 07/01/2021 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $13,969.96 |
| ↻ Unpaid Charge | 07/01/2021 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $13,956.46 |
| ↻ Unpaid Charge | 06/30/2021 | | 33250 - Other Income:Late Fee : Calculated on 06/30/2021 5:10 AM by system | | | $205.00 | | $13,045.46 |
| ↻ Unpaid Charge | 06/01/2021 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $12,840.46 |
| ↻ Unpaid Charge | 06/01/2021 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $12,826.96 |
| ↻ Unpaid Charge | 05/31/2021 | | 33250 - Other Income:Late Fee : Calculated on 05/31/2021 5:12 AM by system | | | $210.00 | | $11,915.96 |
| ↻ Unpaid Charge | 05/01/2021 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $11,705.96 |
| ↻ Unpaid Charge | 05/01/2021 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $11,692.46 |
| ↻ Unpaid Charge | 04/30/2021 | | 33250 - Other Income:Late Fee : Calculated on 04/30/2021 5:12 AM by system | | | $205.00 | | $10,781.46 |
| ↻ Unpaid Charge | 04/01/2021 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $10,576.46 |
| ↻ Unpaid Charge | 04/01/2021 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $10,562.96 |
| ↻ Unpaid Charge | 03/31/2021 | | 33250 - Other Income:Late Fee : Calculated on 03/31/2021 5:09 AM by system | | | $210.00 | | $9,651.96 |
| ↻ Unpaid Charge | 03/01/2021 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $9,441.96 |
| ↻ Unpaid Charge | 02/28/2021 | | 33250 - Other Income:Late Fee : Calculated on 02/28/2021 5:11 AM by system | | | $195.00 | | $8,530.96 |
| ↻ Unpaid Charge | 02/01/2021 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $8,335.96 |
| ↻ Unpaid Charge | 02/01/2021 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $7,424.96 |
| ↻ Unpaid Charge | 01/31/2021 | | 33250 - Other Income:Late Fee : Calculated on 01/31/2021 5:11 AM by system | | | $210.00 | | $7,411.46 |
| ↻ Unpaid Charge | 01/01/2021 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $7,201.46 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Unpaid Charge | 01/01/2021 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $6,290.46 |
| ↻ | Unpaid Charge | 12/31/2020 | | 33250 - Other Income:Late Fee : Calculated on 12/31/2020 5:10 AM by system | | | $210.00 | | $6,276.96 |
| ↻ | Unpaid Charge | 12/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $6,066.96 |
| ↻ | Unpaid Charge | 12/01/2020 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $5,155.96 |
| ↻ | Unpaid Charge | 11/30/2020 | | 33250 - Other Income:Late Fee : Calculated on 11/30/2020 5:23 AM by system | | | $205.00 | | $5,142.46 |
| ↻ | Unpaid Charge | 11/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $911.00 | | $4,937.46 |
| ↻ | Unpaid Charge | 11/01/2020 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $4,026.46 |
| ↻ | Unpaid Charge | 10/31/2020 | | 33250 - Other Income:Late Fee : Calculated on 10/31/2020 5:19 AM by system | | | $210.00 | | $4,012.96 |
| ↻ | Unpaid Charge | 10/09/2020 | Writ Fee | 66710 - Legal - Evictions : Writ Fee | | | $195.00 | | $3,802.96 |
| ↻ | Unpaid Charge | 10/01/2020 | Prorated MTM | 33100 - Lease Income:Rent Inco... : Prorated MTM | | | $860.13 | | $3,607.96 |
| ↻ | Unpaid Charge | 10/01/2020 | | 37200 - Other Income:Tenant Li... | | | $13.50 | | $2,747.83 |
| ↻ | Unpaid Charge | 09/30/2020 | | 33250 - Other Income:Late Fee : Calculated on 09/30/2020 5:23 AM by system | | | $205.00 | | $2,734.33 |
| ↻ | Unpaid Charge | 09/22/2020 | Eviction File Fee | 66710 - Legal - Evictions : Eviction File Fee | | | $295.00 | | $2,529.33 |
| ↻ | Unpaid Charge | 09/22/2020 | Eviction Admin Fee | 66710 - Legal - Evictions | | | $100.00 | | $2,234.33 |
| ↻ | Unpaid Charge | 09/08/2020 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $2,134.33 |
| ↻ | Unpaid Charge | 09/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $2,084.33 |
| ↻ | Unpaid Charge | 09/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $2,073.33 |
| ↻ | Deposited Payment | 08/31/2020 | 26618150327 | Payment: Scanned Check applied to $268.00 applied to [08/01/20, acct 33100, $828.00]/Scanned Check | | 08/31/2020 | | $268.00 | $1,245.33 |
| ↻ | Deposited Payment | 08/31/2020 | 19135442662 | Payment: Scanned Check applied to $560.00 applied to [08/01/20, acct 33100, $828.00]/Scanned Check | | 08/31/2020 | | $560.00 | $1,513.33 |
| ↻ | Unpaid Charge | 08/31/2020 | | 33250 - Other Income:Late Fee : Calculated on 08/31/2020 5:18 AM by system | | | $210.00 | | $2,073.33 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Unpaid Charge | 08/06/2020 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $1,863.33 |
| ↻ | Deposited Payment | 08/03/2020 | 19136467928 | Payment: Scanned Check applied to $828.00 applied to [07/01/20, acct 33100, $828.00]/Scanned Check | | 08/03/2020 | | $828.00 | $1,813.33 |
| ↻ | Unpaid Charge | 08/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $2,641.33 |
| ↻ | Paid Charge | 08/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $2,630.33 |
| ↻ | Unpaid Charge | 07/31/2020 | | 33250 - Other Income:Late Fee : Calculated on 07/31/2020 5:13 AM by system | | | $210.00 | | $1,802.33 |
| ↻ | Deposited Payment | 07/06/2020 | 1573 | Payment: Scanned Check applied to $8.00 applied to [12/01/19, acct 37200, $11.00] and $3.00 applied to [01/01/20, acct 37200, $11.00]/Scanned Check | Antonio Turner | 07/06/2020 | | $11.00 | $1,592.33 |
| ↻ | Deposited Payment | 07/06/2020 | 1572 | Payment: Scanned Check applied to $11.00 applied to [05/01/20, acct 37200, $11.00] and $11.00 applied to [02/01/20, acct 37200, $11.00] and $11.00 applied to [04/01/20, acct 37200, $11.00] and $50.00 applied to [03/06/20, acct 33800, $50.00] and $50.00 applied to [06/08/20, acct 33800, $50.00] and $11.00 applied to [06/01/20, acct 37200, $11.00] and $110.00 applied to [06/15/20, acct 33250, $130.00] and $11.00 applied to [03/01/20, acct 37200, $11.00] and $8.00 applied to [01/01/20, acct 37200, $11.00] and $210.00 applied to [05/31/20, acct 33250, $210.00] and $170.00 applied to [04/23/20, acct 33250, $170.00] and $175.00 applied to [03/24/20, acct 33250, $175.00]/Scanned Check | Antonio Turner | 07/06/2020 | | $828.00 | $1,603.33 |
| ↻ | Unpaid Charge | 07/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $2,431.33 |
| ↻ | Paid Charge | 07/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $2,420.33 |
| ↻ | Unpaid Charge | 06/30/2020 | | 42390 - Property Repairs/Maint... : B5588171 - Doors/Windows/Siding->Windows->Unable to Secure on 4/27/2020 | | | $733.33 | | $1,592.33 |
| ↻ | Deposited Payment | 06/15/2020 | 19106627973 | Payment: Scanned Check applied to $828.00 applied to [06/01/20, acct 33100, $828.00]/Scanned Check | | 06/15/2020 | | $828.00 | $859.00 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ⟳ | Partially Paid Charge | 06/15/2020 | | 33250 - Other Income:Late Fee : Calculated on 06/15/2020 6:36 AM by system | | | $130.00 | | $1,687.00 |
| ⟳ | Deposited Payment | 06/08/2020 | 19106628548 | Payment: Scanned Check applied to $828.00 applied to [05/01/20, acct 33100, $828.00]/Scanned Check | | 06/08/2020 | | $828.00 | $1,557.00 |
| ⟳ | Paid Charge | 06/08/2020 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $2,385.00 |
| ⟳ | Paid Charge | 06/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $2,335.00 |
| ⟳ | Paid Charge | 06/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $2,324.00 |
| ⟳ | Paid Charge | 05/31/2020 | | 33250 - Other Income:Late Fee : Calculated on 05/31/2020 5:22 AM by system | | | $210.00 | | $1,496.00 |
| ⟳ | Paid Charge | 05/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $1,286.00 |
| ⟳ | Paid Charge | 05/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $1,275.00 |
| ⟳ | Deposited Payment | 04/23/2020 | 8641 | Payment: Scanned Check applied to $828.00 applied to [04/01/20, acct 33100, $828.00]/Scanned Check | | 04/23/2020 | | $828.00 | $447.00 |
| ⟳ | Paid Charge | 04/23/2020 | | 33250 - Other Income:Late Fee : Calculated on 04/23/2020 5:15 AM by system | | | $170.00 | | $1,275.00 |
| ⟳ | Paid Charge | 04/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $1,105.00 |
| ⟳ | Paid Charge | 04/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $1,094.00 |
| ⟳ | Deposited Payment | 03/24/2020 | 90 | Payment: Scanned Check applied to $414.00 applied to [03/01/20, acct 33100, $828.00]/Scanned Check | | 03/24/2020 | | $414.00 | $266.00 |
| ⟳ | Deposited Payment | 03/24/2020 | 1474 | Payment: Scanned Check applied to $414.00 applied to [03/01/20, acct 33100, $828.00]/Scanned Check | | 03/24/2020 | | $414.00 | $680.00 |
| ⟳ | Paid Charge | 03/24/2020 | | 33250 - Other Income:Late Fee : Calculated on 03/24/2020 5:16 AM by system | | | $175.00 | | $1,094.00 |
| ⟳ | Paid Charge | 03/06/2020 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $919.00 |
| ⟳ | Paid Charge | 03/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $869.00 |
| ⟳ | Paid Charge | 03/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $858.00 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Deposited Payment | 02/03/2020 | 19058801143 | Payment: Scanned Check applied to $414.00 applied to [02/01/20, acct 33100, $828.00]/Scanned Check | | 02/03/2020 | | $414.00 | $30.00 |
| ↻ | Deposited Payment | 02/03/2020 | 20885186796 | Payment: Scanned Check applied to $414.00 applied to [02/01/20, acct 33100, $828.00]/Scanned Check | | 02/03/2020 | | $414.00 | $444.00 |
| ↻ | Paid Charge | 02/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $858.00 |
| ↻ | Paid Charge | 02/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $847.00 |
| ↻ | Deposited Payment | 01/03/2020 | 19024648703 | Payment: Scanned Check applied to $3.00 applied to [12/01/19, acct 37200, $11.00] and $411.00 applied to [01/01/20, acct 33100, $828.00]/Scanned Check | | 01/03/2020 | | $414.00 | $19.00 |
| ↻ | Deposited Payment | 01/03/2020 | 19049311939 | Payment: Scanned Check applied to $417.00 applied to [01/01/20, acct 33100, $828.00]/Scanned Check | | 01/03/2020 | | $417.00 | $433.00 |
| ↻ | Paid Charge | 01/01/2020 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $850.00 |
| ↻ | Paid Charge | 01/01/2020 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $839.00 |
| ↻ | Deposited Payment | 12/02/2019 | 208805885145 | Payment: Scanned Check applied to $11.00 applied to [11/01/19, acct 37200, $11.00] and $403.00 applied to [12/01/19, acct 33100, $828.00]/Scanned Check | | 12/02/2019 | | $414.00 | $11.00 |
| ↻ | Deposited Payment | 12/02/2019 | 19032482099 | Payment: Scanned Check applied to $11.00 applied to [12/01/19, acct 33100, $828.00]/Scanned Check | | 12/02/2019 | | $11.00 | $425.00 |
| ↻ | Deposited Payment | 12/02/2019 | 19032482098 | Payment: Scanned Check applied to $414.00 applied to [12/01/19, acct 33100, $828.00]/Scanned Check | | 12/02/2019 | | $414.00 | $436.00 |
| ↻ | Paid Charge | 12/01/2019 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $850.00 |
| ↻ | Paid Charge | 12/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $839.00 |
| ↻ | Deposited Payment | 11/04/2019 | 19024646325 | Payment: Scanned Check applied to $414.00 applied to [11/01/19, acct 33100, $828.00]/Scanned Check | | 11/04/2019 | | $414.00 | $11.00 |
| ↻ | Deposited Payment | 11/04/2019 | 19024646324 | Payment: Scanned Check applied to $414.00 applied to [11/01/19, acct 33100, $828.00]/Scanned Check | | 11/04/2019 | | $414.00 | $425.00 |
| ↻ | Paid Charge | 11/01/2019 | | 37200 - Other Income:Tenant Li... | | | $11.00 | | $839.00 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Paid Charge | 11/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $828.00 | | $828.00 |
| ↻ | Deposited Payment | 10/31/2019 | 17668358888 | Payment: Scanned Check applied to $15.49 applied to [10/01/19, acct 33100, $803.49]/Scanned Check | | 10/31/2019 | | $15.49 | $0.00 |
| ↻ | Deposited Payment | 10/02/2019 | 17668356416 | Payment: Scanned Check applied to $394.00 applied to [10/01/19, acct 33100, $803.49]/Scanned Check | | 10/02/2019 | | $394.00 | $15.49 |
| ↻ | Deposited Payment | 10/02/2019 | 19030641233 | Payment: Scanned Check applied to $394.00 applied to [10/01/19, acct 33100, $803.49]/Scanned Check | | 10/02/2019 | | $394.00 | $409.49 |
| ↻ | Paid Charge | 10/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $803.49 | | $803.49 |
| | Charge Adjustment | 09/04/2019 | | 33250 - Other Income:Late Fee : Went was received in office on time SW | Antonio Turner | | | $75.00 | $0.00 |
| ↻ | Deposited Payment | 09/04/2019 | 3986381862 | Payment: Scanned Check applied to $394.00 applied to [09/01/19, acct 33100, $788.00]/Scanned Check | | 09/04/2019 | | $394.00 | $75.00 |
| ↻ | Deposited Payment | 09/04/2019 | 208757285968 | Payment: Scanned Check applied to $394.00 applied to [09/01/19, acct 33100, $788.00]/Scanned Check | | 09/04/2019 | | $394.00 | $469.00 |
| ↻ | Paid Charge | 09/04/2019 | | 33250 - Other Income:Late Fee : Calculated on 09/04/2019 5:22 AM by system | | | $75.00 | | $863.00 |
| ↻ | Paid Charge | 09/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $788.00 |
| ↻ | Deposited Payment | 08/26/2019 | 17985899452 | Payment: Scanned Check applied to $19.66 applied to [07/08/19, acct 33800, $50.00] and $50.00 applied to [08/06/19, acct 33800, $50.00]/Scanned Check | | 08/26/2019 | | $69.66 | $0.00 |
| ↻ | Deposited Payment | 08/15/2019 | 208757276497 | Payment: Scanned Check applied to $30.34 applied to [07/08/19, acct 33800, $50.00] and $174.66 applied to [04/12/19, acct 66710, $195.00] and $25.00 applied to [05/03/19, acct 66710, $25.00] and $130.00 applied to [08/15/19, acct 33250, $130.00] and $34.00 applied to [08/01/19, acct 33100, $788.00]/Scanned Check | | 08/15/2019 | | $394.00 | $69.66 |
| ↻ | Deposited Payment | 08/15/2019 | 17672975821 | Payment: Scanned Check applied to $574.00 applied to [08/01/19, acct 33100, $788.00]/Scanned Check | | 08/15/2019 | | $574.00 | $463.66 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Paid Charge | 08/15/2019 | | 33250 - Other Income:Late Fee : Calculated on 08/15/2019 5:20 AM by system | | | $130.00 | | $1,037.66 |
| ↻ | Paid Charge | 08/06/2019 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $907.66 |
| ↻ | Paid Charge | 08/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $857.66 |
| ↻ | Deposited Payment | 07/31/2019 | 5400 | Payment of $180.00 applied to [08/01/19, acct 33100, $788.00]/Scanned Check | | 08/01/2019 | | $180.00 | $69.66 |
| ↻ | Deposited Payment | 07/15/2019 | 0300 | Payment: Scanned Check applied to $106.66 applied to [07/01/19, acct 33100, $788.00] and $20.34 applied to [04/12/19, acct 66710, $195.00] and $75.00 applied to [06/30/19, acct 33250, $205.00] and $130.00 applied to [07/15/19, acct 33250, $130.00]/Scanned Check | | 07/15/2019 | | $332.00 | $249.66 |
| ↻ | Deposited Payment | 07/15/2019 | 4408 | Payment: Scanned Check applied to $396.00 applied to [07/01/19, acct 33100, $788.00]/Scanned Check | | 07/15/2019 | | $396.00 | $581.66 |
| ↻ | Deposited Payment | 07/15/2019 | 6856 | Payment: Scanned Check applied to $61.00 applied to [07/01/19, acct 33100, $788.00]/Scanned Check | | 07/15/2019 | | $61.00 | $977.66 |
| ↻ | Paid Charge | 07/15/2019 | | 33250 - Other Income:Late Fee : Calculated on 07/15/2019 5:18 AM by system | | | $130.00 | | $1,038.66 |
| ↻ | Paid Charge | 07/08/2019 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $908.66 |
| | Charge Adjustment | 07/05/2019 | May Notice Fee | 33800 - Other Income:Tenant No... : Remove 05/2019 notice fee per ek | Antonio Turner | | | $50.00 | $858.66 |
| | Charge Adjustment | 07/05/2019 | June 2019 Late Fee | 33250 - Other Income:Late Fee : June late fee charge should be $75 per ek | Antonio Turner | | | $130.00 | $908.66 |
| | Charge Adjustment | 07/05/2019 | May 2019 Late Fee | 33250 - Other Income:Late Fee : Remove 05/2019 late fee per ek | Antonio Turner | | | $210.00 | $1,038.66 |
| | Charge Adjustment | 07/05/2019 | April 2019 Late Fee | 33250 - Other Income:Late Fee : Remove 04/2019 late fee per ek | Antonio Turner | | | $205.00 | $1,248.66 |
| | Charge Adjustment | 07/05/2019 | March 2019 Late Fee | 33250 - Other Income:Late Fee : Remove 03/2019 late fee per ek | Antonio Turner | | | $210.00 | $1,453.66 |
| | Charge Adjustment | 07/05/2019 | Feb 2019 Late Fee | 33250 - Other Income:Late Fee : Remove 02/2019 late fee per ek | Antonio Turner | | | $195.00 | $1,663.66 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| | Charge Adjustment | 07/05/2019 | Jan 2019 Late Fee | 33250 - Other Income:Late Fee : Remove 01/2019 late fee per ek | Antonio Turner | | | $210.00 | $1,858.66 |
| | Charge Adjustment | 07/05/2019 | Dec 2018 Late Fee | 33250 - Other Income:Late Fee : Remove 12/2018 late fee per ek | Antonio Turner | | | $210.00 | $2,068.66 |
| | Charge Adjustment | 07/05/2019 | Nov 2018 Late Fee | 33250 - Other Income:Late Fee : Remove 11/2018 late fee per ek | Antonio Turner | | | $195.00 | $2,278.66 |
| | Charge Adjustment | 07/05/2019 | October 2018 Late Fee | 33250 - Other Income:Late Fee : Remove 10/2018 late fee per ek | Antonio Turner | | | $95.00 | $2,473.66 |
| | Charge Adjustment | 07/05/2019 | September 2018 Late Fee | 33250 - Other Income:Late Fee : Remove 09/2018 late fee per ek | Antonio Turner | | | $85.00 | $2,568.66 |
| | Charge Adjustment | 07/05/2019 | August 2018 Late Fee | 33250 - Other Income:Late Fee : Remove 08/2018 late fee per ek | Antonio Turner | | | $85.00 | $2,653.66 |
| ↻ | Paid Charge | 07/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $2,738.66 |
| ↻ | Paid Charge | 06/30/2019 | | 33250 - Other Income:Late Fee : Calculated on 06/30/2019 6:16 AM by system | | | $205.00 | | $1,950.66 |
| ↻ | Deposited Payment | 06/19/2019 | 8092 | Payment: Scanned Check applied to $229.00 applied to [05/01/19, acct 33100, $788.00]/Scanned Check | | 06/19/2019 | | $229.00 | $1,745.66 |
| ↻ | Deposited Payment | 06/04/2019 | 17988155752 | Payment: Scanned Check applied to $13.66 applied to [04/01/19, acct 33100, $788.00] and $286.34 applied to [05/01/19, acct 33100, $788.00]/Scanned Check | | 06/10/2019 | | $300.00 | $1,974.66 |
| ↻ | Deposited Payment | 06/04/2019 | 2577985455 | Payment: Scanned Check applied to $492.00 applied to [04/01/19, acct 33100, $788.00]/Scanned Check | | 06/04/2019 | | $492.00 | $2,274.66 |
| ↻ | Paid Charge | 06/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $2,766.66 |
| ↻ | Paid Charge | 05/31/2019 | | 33250 - Other Income:Late Fee : Calculated on 05/31/2019 5:16 AM by system | | | $210.00 | | $1,978.66 |
| ↻ | Deposited Payment | 05/16/2019 | 7717 | Payment: Scanned Check applied to $256.00 applied to [04/01/19, acct 33100, $788.00]/Scanned Check | | 05/16/2019 | | $256.00 | $1,768.66 |
| ↻ | Paid Charge | 05/06/2019 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $2,024.66 |
| ↻ | Paid Charge | 05/03/2019 | Dismissal Fee | 66710 - Legal - Evictions | | | $25.00 | | $1,974.66 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Deposited Payment | 05/03/2019 | 90 | Payment: Scanned Check applied to $210.00 applied to [03/31/19, acct 33250, $210.00] and $135.55 applied to [03/25/19, acct 66710, $295.00] and $26.34 applied to [04/01/19, acct 33100, $788.00] and $22.11 applied to [03/31/19, acct 45300, $22.11]/Scanned Check | Antonio Turner | 05/03/2019 | | $394.00 | $1,949.66 |
| ↻ | Deposited Payment | 05/03/2019 | 90 | Payment: Scanned Check applied to $84.55 applied to [03/01/19, acct 33100, $788.00] and $159.45 applied to [03/25/19, acct 66710, $295.00] and $100.00 applied to [03/25/19, acct 4001, $100.00] and $50.00 applied to [03/06/19, acct 33800, $50.00]/Scanned Check | Antonio Turner | 05/03/2019 | | $394.00 | $2,343.66 |
| ↻ | Deposited Payment | 05/03/2019 | 1231 | Payment: Scanned Check applied to $394.00 applied to [03/01/19, acct 33100, $788.00]/Scanned Check | Antonio Turner | 05/03/2019 | | $394.00 | $2,737.66 |
| ↻ | Deposited Payment | 05/03/2019 | 3925 | Payment: Scanned Check applied to $171.11 applied to [03/01/19, acct 33100, $788.00] and $39.32 applied to [02/28/19, acct 45300, $39.32] and $183.57 applied to [02/28/19, acct 33250, $195.00]/Scanned Check | Antonio Turner | 05/03/2019 | | $394.00 | $3,131.66 |
| ↻ | Deposited Payment | 05/03/2019 | 3308 | Payment: Scanned Check applied to $11.43 applied to [02/28/19, acct 33250, $195.00] and $50.00 applied to [02/06/19, acct 33800, $50.00]/Scanned Check | Antonio Turner | 05/03/2019 | | $61.43 | $3,525.66 |
| ↻ | Paid Charge | 05/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $3,587.09 |
| ↻ | Paid Charge | 04/30/2019 | | 33250 - Other Income:Late Fee : Calculated on 04/30/2019 5:16 AM by system | | | $205.00 | | $2,799.09 |
| ↻ | Paid Charge | 04/12/2019 | Writ | 66710 - Legal - Evictions | | | $195.00 | | $2,594.09 |
| ↻ | Paid Charge | 04/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $2,399.09 |
| ↻ | Paid Charge | 03/31/2019 | | 45300 - Utilities:Water/Sewer - Acct# 06930007 / Service period 2/5 to 2/26 | | | $22.11 | | $1,611.09 |
| ↻ | Paid Charge | 03/31/2019 | | 33250 - Other Income:Late Fee : Calculated on 03/31/2019 5:22 AM by system | | | $210.00 | | $1,588.98 |
| ↻ | Paid Charge | 03/25/2019 | Eviction Fee | 66710 - Legal - Evictions | | | $295.00 | | $1,378.98 |
| ↻ | Paid Charge | 03/25/2019 | | 4001 - Other Income:Eviction A... | | | $100.00 | | $1,083.98 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Paid Charge | 03/06/2019 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $983.98 |
| ↻ | Deposited Payment | 03/04/2019 | 17926294035 | Payment: Scanned Check applied to $138.34 applied to [03/01/19, acct 33100, $788.00] and $255.66 applied to [02/01/19, acct 33100, $788.00]/Scanned Check | | 03/04/2019 | | $394.00 | $933.98 |
| ↻ | Deposited Payment | 03/04/2019 | 17889683809 | Payment: Scanned Check applied to $394.00 applied to [02/01/19, acct 33100, $788.00]/Scanned Check | | 03/04/2019 | | $394.00 | $1,327.98 |
| ↻ | Paid Charge | 03/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $1,721.98 |
| ↻ | Paid Charge | 02/28/2019 | | 45300 - Utilities:Water/Sewer : Acct# 06930007 / Service Period 1/4 to 2/5 | | | $39.32 | | $933.98 |
| ↻ | Paid Charge | 02/28/2019 | | 33250 - Other Income:Late Fee : Calculated on 02/28/2019 6:12 AM by system | | | $195.00 | | $894.66 |
| ↻ | Deposited Payment | 02/25/2019 | 17901310900 | Payment of $62.72 applied to [01/31/19, acct 45300, $62.72] and $102.28 applied to [01/31/19, acct 33250, $210.00]/Scanned Check | Antonio Turner | 02/25/2019 | | $165.00 | $699.66 |
| ↻ | Paid Charge | 02/06/2019 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $864.66 |
| ↻ | Deposited Payment | 02/04/2019 | 17890148965 | Payment of $138.34 applied to [02/01/19, acct 33100, $788.00] and $107.72 applied to [01/31/19, acct 33250, $210.00] and $147.94 applied to [01/01/19, acct 33100, $788.00]/Scanned Check | Antonio Turner | 02/04/2019 | | $394.00 | $814.66 |
| ↻ | Deposited Payment | 02/04/2019 | 17880974480 | Payment: Scanned Check applied to $394.00 applied to [01/01/19, acct 33100, $788.00]/Scanned Check | | 02/04/2019 | | $394.00 | $1,208.66 |
| ↻ | Paid Charge | 02/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $1,602.66 |
| ↻ | Paid Charge | 01/31/2019 | | 45300 - Utilities:Water/Sewer : Acct# 06930007 / Ser period - 12/05-01/04 | | | $62.72 | | $814.66 |
| ↻ | Paid Charge | 01/31/2019 | | 33250 - Other Income:Late Fee : Calculated on 01/31/2019 5:14 AM by system | | | $210.00 | | $751.94 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ⟳ | Deposited Payment | 01/02/2019 | 17861897573 | Payment: Scanned Check applied to $51.02 applied to [12/31/18, acct 45300, $51.02] and $246.06 applied to [01/01/19, acct 33100, $788.00] and $96.92 applied to [12/31/18, acct 33250, $210.00]/Scanned Check | Antonio Turner | 01/02/2019 | | $394.00 | $541.94 |
| ⟳ | Deposited Payment | 01/02/2019 | 17802565490 | Payment: Scanned Check applied to $195.00 applied to [11/28/18, acct 33250, $195.00] and $113.08 applied to [12/31/18, acct 33250, $210.00] and $34.71 applied to [12/01/18, acct 33100, $788.00] and $51.21 applied to [11/30/18, acct 45300, $51.21]/Scanned Check | Antonio Turner | 01/02/2019 | | $394.00 | $935.94 |
| ⟳ | Paid Charge | 01/01/2019 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $1,329.94 |
| ⟳ | Paid Charge | 12/31/2018 | | 45300 - Utilities:Water/Sewer : Acct# 06930007 / Ser Period - 11/5-12/5 | | | $51.02 | | $541.94 |
| ⟳ | Paid Charge | 12/31/2018 | | 33250 - Other Income:Late Fee : Calculated on 12/31/2018 5:16 AM by system | | | $210.00 | | $490.92 |
| ⟳ | Paid Charge | 12/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $280.92 |
| ⟳ | Paid Charge | 11/30/2018 | | 45300 - Utilities:Water/Sewer : Acct# 06930007 / Ser Period - 10/16-11/15 | | | $51.21 | | ($507.08) |
| ⟳ | Deposited Payment | 11/28/2018 | 208324600088 | Payment of $394.00 applied to [12/01/18, acct 33100, $788.00]/Scanned Check | | 11/28/2018 | | $394.00 | ($558.29) |
| ⟳ | Deposited Payment | 11/28/2018 | 17835525880 | Payment of $359.29 applied to [12/01/18, acct 33100, $788.00] and $34.71 applied to [11/01/18, acct 33100, $788.00]/Scanned Check | | 11/28/2018 | | $394.00 | ($164.29) |
| ⟳ | Paid Charge | 11/28/2018 | | 33250 - Other Income:Late Fee : Calculated on 11/28/2018 5:21 AM by system | | | $195.00 | | $229.71 |
| ⟳ | Paid Charge | 11/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $788.00 | | $34.71 |
| ⟳ | Deposited Payment | 10/25/2018 | 17-802779213 | Payment of $390.00 applied to [11/01/18, acct 33100, $788.00] | Antonio Turner | 10/30/2018 | | $390.00 | ($753.29) |
| ⟳ | Deposited Payment | 10/25/2018 | 20807672162 | Payment of $363.29 applied to [11/01/18, acct 33100, $788.00] and $34.71 applied to [09/06/18, acct 33800, $50.00] | Antonio Turner | 10/30/2018 | | $398.00 | ($363.29) |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Deposited Payment | 10/22/2018 | 17-822996705 | Payment of $85.00 applied to [09/06/18, acct 33250, $85.00] and $95.00 applied to [10/22/18, acct 33250, $95.00] and $15.29 applied to [09/06/18, acct 33800, $50.00] and $14.71 applied to [10/15/18, acct 33100, $14.71] | Antonio Turner | 10/23/2018 | | $210.00 | $34.71 |
| ↻ | Paid Charge | 10/22/2018 | | 33250 - Other Income:Late Fee : Calculated on 10/22/2018 5:17 AM by system | | | $95.00 | | $244.71 |
| ↻ | Paid Charge | 10/15/2018 | Prorated Rent for the rent diff | 33100 - Lease Income:Rent Inco... : Prorated Rent for the rent diff october | | | $14.71 | | $149.71 |
| ↻ | Deposited Payment | 10/04/2018 | 17822997283 | Payment: Scanned Check applied to $370.00 applied to [10/01/18, acct 33100, $750.00]/Scanned Check | | 10/04/2018 | | $370.00 | $135.00 |
| ↻ | Deposited Payment | 10/04/2018 | 17822997285 | Payment: Scanned Check applied to $380.00 applied to [10/01/18, acct 33100, $750.00]/Scanned Check | | 10/04/2018 | | $380.00 | $505.00 |
| ↻ | Paid Charge | 10/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $885.00 |
| ↻ | Deposited Payment | 09/06/2018 | 17798395145 | Payment: Scanned Check applied to $370.00 applied to [09/01/18, acct 33100, $750.00]/Scanned Check | | 09/06/2018 | | $370.00 | $135.00 |
| ↻ | Deposited Payment | 09/06/2018 | 17798395144 | Payment: Scanned Check applied to $380.00 applied to [09/01/18, acct 33100, $750.00]/Scanned Check | | 09/06/2018 | | $380.00 | $505.00 |
| ↻ | Paid Charge | 09/06/2018 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $885.00 |
| ↻ | Paid Charge | 09/06/2018 | | 33250 - Other Income:Late Fee : Calculated on 09/06/2018 5:41 AM by system | | | $85.00 | | $835.00 |
| ↻ | Paid Charge | 09/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $750.00 |
| ↻ | Deposited Payment | 08/22/2018 | 17778064164 | Payment: Scanned Check applied to $85.00 applied to [08/06/18, acct 33250, $85.00] and $50.00 applied to [08/06/18, acct 33800, $50.00]/Scanned Check | | 08/22/2018 | | $135.00 | $0.00 |
| ↻ | Paid Charge | 08/06/2018 | | 33800 - Other Income:Tenant No... : Imported Lease Charge | | | $50.00 | | $135.00 |
| ↻ | Deposited Payment | 08/06/2018 | 17798391421 | Payment: Scanned Check applied to $370.00 applied to [08/01/18, acct 33100, $750.00]/Scanned Check | | 08/06/2018 | | $370.00 | $85.00 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Deposited Payment | 08/06/2018 | 17798384466 | Payment: Scanned Check applied to $380.00 applied to [08/01/18, acct 33100, $750.00]/Scanned Check | | 08/06/2018 | | $380.00 | $455.00 |
| ↻ | Paid Charge | 08/06/2018 | | 33250 - Other Income:Late Fee : Calculated on 08/06/2018 7:47 AM by system | | | $85.00 | | $835.00 |
| ↻ | Paid Charge | 08/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $750.00 |
| ↻ | Deposited Payment | 07/02/2018 | 17785837818 | Payment: Scanned Check applied to $380.00 applied to [07/01/18, acct 33100, $750.00]/Scanned Check | | 07/02/2018 | | $380.00 | $0.00 |
| ↻ | Deposited Payment | 07/02/2018 | 17785837817 | Payment: Scanned Check applied to $370.00 applied to [07/01/18, acct 33100, $750.00]/Scanned Check | | 07/02/2018 | | $370.00 | $380.00 |
| ↻ | Paid Charge | 07/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $750.00 |
| ↻ | Deposited Payment | 06/06/2018 | 17755322787 | Payment: Scanned Check applied to $370.00 applied to [06/01/18, acct 33100, $750.00]/Scanned Check | | 06/06/2018 | | $370.00 | $0.00 |
| ↻ | Deposited Payment | 06/06/2018 | 17735417583 | Payment: Scanned Check applied to $380.00 applied to [06/01/18, acct 33100, $750.00]/Scanned Check | | 06/06/2018 | | $380.00 | $370.00 |
| ↻ | Paid Charge | 06/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $750.00 |
| ↻ | Deposited Payment | 05/04/2018 | 17705221321 | Payment: Scanned Check applied to $745.00 applied to [05/01/18, acct 33100, $750.00]/Scanned Check | | 05/04/2018 | | $745.00 | $0.00 |
| ↻ | Paid Charge | 05/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $745.00 |
| ↻ | Deposited Payment | 04/05/2018 | 17731813602 | Payment of $5.00 applied to [05/01/18, acct 33100, $750.00] and $370.00 applied to [04/01/18, acct 33100, $750.00] | Antonio Turner | 04/06/2018 | | $375.00 | ($5.00) |
| ↻ | Deposited Payment | 04/05/2018 | 17705222522 | Payment of $380.00 applied to [04/01/18, acct 33100, $750.00] | Antonio Turner | 04/06/2018 | | $380.00 | $370.00 |
| ↻ | Paid Charge | 04/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $750.00 |
| ↻ | Deposited Payment | 03/05/2018 | 17712578689 | Payment: Scanned Check applied to $370.00 applied to [03/01/18, acct 33100, $750.00]/Scanned Check | | 03/05/2018 | | $370.00 | $0.00 |
| ↻ | Deposited Payment | 03/05/2018 | 90 | Payment: Scanned Check applied to $370.00 applied to [03/01/18, acct 33100, $750.00]/Scanned Check | | 03/05/2018 | | $370.00 | $370.00 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Paid Charge | 03/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $740.00 |
| ↻ | Deposited Payment | 02/01/2018 | 90 | Payment of $10.00 applied to [03/01/18, acct 33100, $750.00] and $365.00 applied to [02/01/18, acct 33100, $750.00]/Scanned Check | | 02/01/2018 | | $375.00 | ($10.00) |
| ↻ | Deposited Payment | 02/01/2018 | 17267939953 | Payment: Scanned Check applied to $380.00 applied to [02/01/18, acct 33100, $750.00]/Scanned Check | | 02/01/2018 | | $380.00 | $365.00 |
| ↻ | Paid Charge | 02/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $745.00 |
| | Charge Adjustment | 01/25/2018 | | 33503 - Lease Income:Concessio... : Late Fee Applied for $0.66 Balance | Antonio Turner | | | $210.00 | ($5.00) |
| ↻ | Deposited Payment | 01/03/2018 | 17664473961 | Payment: Scanned Check applied to $380.66 applied to [01/01/18, acct 33100, $750.00]/Scanned Check | | 01/03/2018 | | $380.66 | $205.00 |
| ↻ | Deposited Payment | 01/03/2018 | 17698151641 | Payment: Scanned Check applied to $0.66 applied to [12/01/17, acct 33100, $750.00] and $210.00 applied to [12/31/17, acct 33250, $210.00] and $164.34 applied to [01/01/18, acct 33100, $750.00]/Scanned Check | | 01/03/2018 | | $375.00 | $585.66 |
| ↻ | Paid Charge | 01/01/2018 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $960.66 |
| ↻ | Paid Charge | 12/31/2017 | | 33250 - Other Income:Late Fee : Calculated on 12/31/2017 5:05 AM by system | | | $210.00 | | $210.66 |
| ↻ | Deposited Payment | 12/05/2017 | 17263951590 | Payment of $375.00 applied to [12/01/17, acct 33100, $750.00] | Antonio Turner | 12/06/2017 | | $375.00 | $0.66 |
| ↻ | Deposited Payment | 12/05/2017 | 17263951588 | Payment of $374.00 applied to [12/01/17, acct 33100, $750.00] | Antonio Turner | 12/06/2017 | | $374.00 | $375.66 |
| ↻ | Paid Charge | 12/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $749.66 |
| ↻ | Deposited Payment | 11/06/2017 | 3780658845 | Payment of $0.34 applied to [12/01/17, acct 33100, $750.00] and $349.66 applied to [11/01/17, acct 33100, $750.00] | Antonio Turner | 11/07/2017 | | $350.00 | ($0.34) |
| ↻ | Deposited Payment | 11/06/2017 | 17656119385 | Payment of $351.00 applied to [11/01/17, acct 33100, $750.00] | Antonio Turner | 11/07/2017 | | $351.00 | $349.66 |
| ↻ | Paid Charge | 11/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $750.00 | | $700.66 |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Paid Charge | 10/01/2017 | Prorated Rent for October-Renewal | 33100 - Lease Income:Rent Inco... : Prorate rent for October | | | $726.76 | | ($49.34) |
| ↻ | Deposited Payment | 09/29/2017 | 3780653031 | Payment of $49.34 applied to [11/01/17, acct 33100, $750.00] and $325.66 applied to [10/01/17, acct 33100, $726.76]/Scanned Check | | 09/29/2017 | | $375.00 | ($776.10) |
| ↻ | Deposited Payment | 09/29/2017 | 17649934018 | Payment of $350.00 applied to [10/01/17, acct 33100, $726.76]/Scanned Check | | 09/29/2017 | | $350.00 | ($401.10) |
| ↻ | Paid Charge | 09/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | ($51.10) |
| ↻ | Deposited Payment | 08/28/2017 | 17627163281 | Payment of $51.10 applied to [10/01/17, acct 33100, $726.76] and $648.90 applied to [09/01/17, acct 33100, $714.00]/Scanned Check | | 08/28/2017 | | $700.00 | ($765.10) |
| ↻ | Deposited Payment | 08/01/2017 | 17610349291 | Payment of $65.10 applied to [09/01/17, acct 33100, $714.00] and $284.90 applied to [08/01/17, acct 33100, $714.00] | Antonio Turner | 08/01/2017 | | $350.00 | ($65.10) |
| ↻ | Deposited Payment | 08/01/2017 | 17626714063 | Payment of $364.00 applied to [08/01/17, acct 33100, $714.00] | Antonio Turner | 08/01/2017 | | $364.00 | $284.90 |
| ↻ | Paid Charge | 08/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | $648.90 |
| ↻ | Paid Charge | 07/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | ($65.10) |
| ↻ | Deposited Payment | 06/29/2017 | 17578841754 | Payment of $65.10 applied to [08/01/17, acct 33100, $714.00] and $284.90 applied to [07/01/17, acct 33100, $714.00]/Scanned Check | | 06/29/2017 | | $350.00 | ($779.10) |
| ↻ | Deposited Payment | 06/29/2017 | 17599352724 | Payment of $364.00 applied to [07/01/17, acct 33100, $714.00]/Scanned Check | | 06/29/2017 | | $364.00 | ($429.10) |
| ↻ | Paid Charge | 06/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | ($65.10) |
| ↻ | Deposited Payment | 05/30/2017 | 17588930082 | Payment of $65.10 applied to [07/01/17, acct 33100, $714.00] and $284.90 applied to [06/01/17, acct 33100, $714.00]/Scanned Check | | 05/30/2017 | | $350.00 | ($779.10) |
| ↻ | Deposited Payment | 05/30/2017 | 17590229526 | Payment of $364.00 applied to [06/01/17, acct 33100, $714.00]/Scanned Check | | 05/30/2017 | | $364.00 | ($429.10) |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Deposited Payment | 05/05/2017 | 17569083380 | Payment of $65.10 applied to [06/01/17, acct 33100, $714.00] and $284.90 applied to [05/01/17, acct 33100, $714.00]/Scanned Check | | 05/05/2017 | | $350.00 | ($65.10) |
| ↻ | Deposited Payment | 05/05/2017 | 17576854324 | Payment: Scanned Check applied to $364.00 applied to [05/01/17, acct 33100, $714.00]/Scanned Check | | 05/05/2017 | | $364.00 | $284.90 |
| ↻ | Paid Charge | 05/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | $648.90 |
| ↻ | Paid Charge | 04/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | ($65.10) |
| ↻ | Deposited Payment | 03/30/2017 | 6969 | Payment of $65.10 applied to [05/01/17, acct 33100, $714.00] and $284.90 applied to [04/01/17, acct 33100, $714.00]/Scanned Check | | 03/30/2017 | | $350.00 | ($779.10) |
| ↻ | Deposited Payment | 03/30/2017 | 9600 | Payment of $364.00 applied to [04/01/17, acct 33100, $714.00]/Scanned Check | | 03/30/2017 | | $364.00 | ($429.10) |
| ↻ | Paid Charge | 03/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | ($65.10) |
| ↻ | Deposited Payment | 02/23/2017 | 9606 | Payment of $65.10 applied to [04/01/17, acct 33100, $714.00] and $298.90 applied to [03/01/17, acct 33100, $714.00]/Scanned Check | | 02/23/2017 | | $364.00 | ($779.10) |
| ↻ | Deposited Payment | 02/23/2017 | 9207 | Payment of $350.00 applied to [03/01/17, acct 33100, $714.00]/Scanned Check | | 02/23/2017 | | $350.00 | ($415.10) |
| ↻ | Paid Charge | 02/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | ($65.10) |
| ↻ | Deposited Payment | 01/25/2017 | 2827 | Payment of $65.10 applied to [03/01/17, acct 33100, $714.00] and $648.90 applied to [02/01/17, acct 33100, $714.00]/Scanned Check | | 01/26/2017 | | $714.00 | ($779.10) |
| ↻ | Paid Charge | 01/01/2017 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | ($65.10) |
| ↻ | Deposited Payment | 12/29/2016 | 8296 | Payment of $65.10 applied to [02/01/17, acct 33100, $714.00] and $288.90 applied to [01/01/17, acct 33100, $714.00]/Scanned Check | | 12/29/2016 | | $354.00 | ($779.10) |
| ↻ | Deposited Payment | 12/29/2016 | 8295 | Payment of $360.00 applied to [01/01/17, acct 33100, $714.00]/Scanned Check | | 12/29/2016 | | $360.00 | ($425.10) |
| ↻ | Paid Charge | 12/01/2016 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | ($65.10) |

| | Transaction | Date | Ref # | Description | Payer Name | Deposit Date | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ↻ | Deposited Payment | 11/28/2016 | 4245 | Payment of $19.00 applied to [01/01/17, acct 33100, $714.00]/Scanned Check | | 11/28/2016 | | $19.00 | ($779.10) |
| ↻ | Deposited Payment | 11/28/2016 | 4424 | Payment of $46.10 applied to [01/01/17, acct 33100, $714.00] and $653.90 applied to [12/01/16, acct 33100, $714.00]/Scanned Check | | 11/28/2016 | | $700.00 | ($760.10) |
| ↻ | Deposited Payment | 11/01/2016 | 1575 | Payment of $60.10 applied to [12/01/16, acct 33100, $714.00] and $289.90 applied to [11/01/16, acct 33100, $714.00]/Scanned Check | | 11/01/2016 | | $350.00 | ($60.10) |
| ↻ | Deposited Payment | 11/01/2016 | 1574 | Payment: Scanned Check applied to $355.00 applied to [11/01/16, acct 33100, $714.00]/Scanned Check | | 11/01/2016 | | $355.00 | $289.90 |
| ↻ | Paid Charge | 11/01/2016 | | 33100 - Lease Income:Rent Inco... | | | $714.00 | | $644.90 |
| ↻ | Journal Entry | 10/19/2016 | Bank Transfer | Transfer Security Deposit out of the Rent Account | | | $714.00 | $714.00 | ($69.10) |
| ↻ | Deposited Payment | 10/19/2016 | 3224 | Payment of $69.10 applied to [11/01/16, acct 33100, $714.00] and $322.45 applied to [10/18/16, acct 20210, $714.00]/Scanned Check | | 10/19/2016 | | $391.55 | ($69.10) |
| ↻ | Deposited Payment | 10/19/2016 | 3235 | Payment: Scanned Check applied to $322.45 applied to [10/18/16, acct 33100, $322.45] and $391.55 applied to [10/18/16, acct 20210, $714.00]/Scanned Check | | 10/19/2016 | | $714.00 | $322.45 |
| ↻ | Paid Charge | 10/18/2016 | October Pro Rated Rent | 33100 - Lease Income:Rent Inco... : October Pro Rated Rent | | | $322.45 | | $1,036.45 |
| ↻ | Paid Charge | 10/18/2016 | | 20210 - Deposit Liabilities:Se... | | | $714.00 | | $714.00 |

Copyright © Propertyware® 2003-2022. All rights reserved.
Various trademarks held by their respective owners.